Argued and submitted November 12, 1981, affirmed September 21, 1983

## STATE OF OREGON,
*Respondent,*

*v.*

## WILLIAM GREGORY CLIFTON,
*Appellant.*

(81-0260; CA A21558)

669 P2d 353

Gary D. Babcock, Public Defender, and John Daugirda, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem, filed the brief for respondent.

Before Gillette, Presiding Judge, and Joseph, Chief Judge, and Warden,* Judge.

GILLETTE, P. J.

---

*Warden, J., *vice* Roberts, Judge Pro Tempore.

## GILLETTE, P. J.

In this criminal case, defendant seeks reversal of five felony convictions, contending that the trial court erred by failing to "merge" the convictions for sentencing purposes.[1] We affirm.

On the evening of January 19, 1981, defendant and a group of friends congregated at a bar, where they consumed "excessive quantities" of whiskey and played pool. In the course of the evening, defendant and his companions became involved in a verbal altercation with Scott Godfrey. Godfrey was asked to leave the bar. As he left the parking lot, he ran over two motorcycles belonging to defendant's companions. Defendant and his friends ascertained Godfrey's identity and tried unsuccessfully to track him down. The group then returned to the bar and drank until 2 a.m.

Between 2 and 2:30 a.m. on January 20, Kimberlee Godfrey, Scott's estranged wife, looked out a window of her home and observed someone slashing the tires of her automobile. Another person, whom she later identified as defendant, was standing nearby with a rifle. Defendant told her to open the door. She refused and attempted to call the police, but her telephone was out of order. She then left her two children in the house, ran to the neighbor's house and asked them to call the police. When she returned home, one of defendant's companions grabbed her and threw her into the house. Defendant and another man then forced her onto the living room floor. Defendant kicked her several times, demanded to know where her husband and her money were, removed her nightgown and abused her sexually. After that, defendant and his companions ransacked the dwelling, damaging some items and stealing others.

As a result of this escapade, defendant was charged with and convicted of burglary in the first degree, theft in the first degree, sexual abuse in the first degree and two counts of criminal mischief in the first degree. Defendant asked the court to merge all five convictions and order that the sentences run concurrently. The trial judge sentenced defendant to 20

---

[1] Defendant's other contention, *i.e.,* that the trial court erred by refusing to suppress in-court and out-of-court identifications that, in defendant's view, resulted from an unduly suggestive photographic display, does not require discussion.

years for the burglary conviction and ordered that the theft conviction "merge"[2] into the burglary conviction. He also sentenced defendant to five years on each criminal mischief conviction and the sexual abuse conviction but ordered that the two criminal mischief sentences run concurrently. Finally, the court ordered that the burglary, criminal mischief and sexual abuse sentences run consecutively, giving defendant a potential incarceration of 30 years. All sentences were the maximum authorized by statute.

Defendant argues that, because his crimes arose from a single "criminal episode" with a single "criminal objective," only one sentence is appropriate under the principles announced in *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979). We agree that *Cloutier's* principles apply to the sentencing issue in this case, but we conclude that the trial court applied them properly.

As the state points out, *Cloutier's* holding was narrow:

> "* * * [W]hen a breaking and entering with intent to commit a crime is followed by the commission of the intended crime, the penalty is to be limited to that prescribed for the offense carrying the greater potential sentence. * * *" 286 Or at 596.

That holding obviously does not control the outcome of the instant case. Its rationale, however, is instructive.

The court in *Cloutier* first pointed out that the legislature's intention should govern sentencing decisions in cases involving multiple offenses by a single defendant. After lamenting that the legislature's views on such matters are rarely set forth with clarity in either the legislative history or statutes themselves, the court concluded that the best indication of legislative intent appeared in the definition of "criminal episode" contained in ORS 131.505(4):

---

[2] We note that both the trial court and defendant used the term "merge" incorrectly throughout this case. As the Supreme Court explained in *State v. Cloutier, supra*, 286 Or at 586, that term

> "* * * is best reserved for the narrow situation when the completion of one offense necessarily includes commission of acts sufficient to constitute violation of another statute. * * *" (Citations omitted.)

*Accord, State v. Linthwaite*, 295 Or 162, 174 n 11, 665 P2d 863 (1983). We held the present case for the Supreme Court's decision in *Linthwaite*.

" ' "Criminal episode" means continuous and uninter-
rupted conduct that establishes at least one offense and is
so joined in time, place and circumstances that such con-
duct is directed to the accomplishment of a single criminal
objective.'

"The relevance of the definition to the sentencing problem is
the light it sheds on the legislature's view of the critical factor
in treating criminal conduct as a unitary event. That factor is
not the coincidence of 'time, place and circumstances' as such,
but the resulting inference that the conduct is 'directed to the
accomplishment of a single criminal objective.' Multiple stat-
utory violations are to be dealt with in one prosecution, not
merely because they involve evidence common to the time,
place and circumstances, but because the responsibility of the
defendant for his conduct in pursuit of one 'criminal objective'
should be fully determined in one proceeding." 286 Or at 595.

Because the two offenses for which Cloutier was con-
victed—attempted theft and burglary—"arose in a criminal
episode marked by a single objective—theft—as well as by
continuity of time and place," the court concluded that only
one sentence was appropriate. Although the court refused at
that time to venture an opinion about the proper disposition of
cases, like this one, where the defendant has committed

"* * * two [or more] equally serious separate offenses
against the same victim for separate criminal objectives, as for
instance a rape and a robbery * * *" 286 Or at 589-99,

the court's reliance on the "criminal objective" test compels its
application to this case. We turn again to the facts before us.

Defendant contends that his objective throughout his
conduct at the Godfrey dwelling was to force Scott Godfrey to
reimburse defendant's friends for the damage that Godfrey did
to their motorcycles. Assuming that "forced reimbursement"
*was* the objective that motivated defendant to locate Godfrey's
wife's house and go there, that objective was served only by the
theft of property that, either in itself or through conversion to
cash, could "reimburse" the owners of the damaged motor-
cycles. Defendant's acts of criminal mischief and sexual abuse,
on the other hand, cannot in any way be said to serve the reim-
bursement objective. We cannot think of a single objective[3]

---

[3] *Cloutier* explains that the term "criminal objective"

"* * * refers to the pursuit of some object or attainment of some goal beyond
the successful commission of the acts constituting the offense charged; * * *" 286
Or at 599 n 21.

that could have motivated both defendant's criminal mischief activities and his sexual attack on Mrs. Godfrey. We therefore conclude that defendant was motivated by at least three criminal objectives and that separate sentences were appropriate for (1) the consolidated theft and burglary convictions, (2) the criminal mischief convictions and (3) the sexual abuse conviction.[4] *See, generally, State v. Linthwaite, supra,* 295 Or 176-180.

Affirmed.

---

[4] We also note that the legislature has made burglary, criminal mischief and sexual abuse three distinct offenses requiring different elements of proof. The creation of three separate types of crime indicates a legislative acceptance of separate sentences for the offenses. *Cf. State v. Garcia,* 288 Or 413, 430, 605 P2d 671 (1980) (multiple sentences for rape and sodomy permissible even though they were arguably part of a single criminal episode with a single criminal objective).