Argued and submitted April 25, affirmed November 19, 1986, reconsideration denied January 16, petition for review denied February 3, 1987 (302 Or 594)

## STATE OF OREGON,
*Respondent,*

*v.*

## STINCY E. HATHAWAY,
*Appellant.*

(84-1040-C; CA A36389)

728 P2d 908

Gary D. Babcock, Public Defender, and Ernest E. Estes, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendant appeals her conviction for delivery of a controlled substance. ORS 475.992. She assigns as error the court's denial of her pretrial motion to dismiss the indictment on the ground of former prosecution. She argues that her previous entry of a guilty plea to another indictment for delivery of a controlled substance barred her prosecution under both ORS 131.515(2) and Article I, section 12, of the Oregon Constitution.[1] We affirm.

The parties stipulated to the facts. During the week of April 27, 1984, an undercover agent ordered a gram of cocaine from defendant. Early on May 7, 1984, the agent telephoned defendant and requested delivery. She told the agent that she had only one-half gram available but that she could obtain the rest the following day. At approximately 2:50 p.m. on May 7, the undercover agent went to defendant's residence and purchased slightly less than one-half gram from her for $60. She advised the agent of the shortage and asked that he return later that evening so that she could make up the shortage and deliver the additional one-half gram. He returned at approximately 6:45 p.m., and defendant sold him an additional one-half gram, for which he also paid $60. Defendant also gave him additional cocaine to make up the shortage on the earlier sale.

On June 21, 1984, the state filed two indictments, one for each delivery of cocaine. Defendant was arraigned on the second indictment on June 26, 1984.[2] Neither party filed a motion to consolidate. On February 26, 1985, defendant pled guilty to the indictment for the first delivery. On February 27, she moved to dismiss the second indictment.

It is unclear on what basis the trial court denied the motion. The parties focus on ORS 131.525(2), which provides:

"A plea of guilty or resulting judgment is not a bar under ORS 131.515(2) to a subsequent prosecution under an accusatory instrument which is filed no later than 30 days after entry of the guilty plea. The defendant's *prior* plea of guilty or resulting judgment, notwithstanding ORS 135.365,

---

[1] Defendant makes no federal constitutional claim.

[2] The record is not clear about when the arraignment on the first indictment took place.

shall be vacated upon motion by the defendant if made within 30 days after defendant's arraignment for the subsequent prosecution. The provisions of ORS 135.445 apply to such a vacated plea or resulting judgment and any statements made in relation to those proceedings." (Emphasis supplied.)

The state argued in this court that that statute "is dispositive of defendant's [statutory] former jeopardy claim in this case" and cited our opinion in *State v. Farley,* 78 Or App 102, 714 P2d 1079 (1986). Subsequently, the Supreme Court reversed. *State v. Farley,* 301 Or 668, 725 P2d 359 (1986). Farley was charged with driving under the influence of intoxicants (DUII) and driving while suspended (DWS). Both charges were based on the same criminal episode within the meaning of ORS 131.515(2), which provides:

"No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

Although both charges were initially filed in district court, the defendant was later indicted on the DWS charge. He then pled guilty to the DUII charge. Fifteen days later he was arraigned on the DWS indictment but failed to move to vacate the prior plea of guilty to the DUII charge within thirty days after the arraignment on the DWS charge. Instead, he moved to dismiss the DWS indictment under ORS 131.515(2). We held that ORS 131.525(2) applied and, therefore, that ORS 131.515(2) did not bar the DWS prosecution because "[t]he indictment * * * [on the DWS charge] was filed * * * *before* defendant pled guilty to the [DUII] charge * * * and was 'no[t] later than 30 days after entry of the guilty plea.' " 78 Or App at 105. (Emphasis in original.) We construed the first sentence of ORS 131.525(2) to apply when the indictment initiating the subsequent prosecution was filed before entry of a guilty plea in the former prosecution.

■ Insofar as our decision in *Farley* holds that a motion to vacate a prior plea of guilty in a former prosecution under ORS 131.525(2) eliminates the *constitutional* jeopardy effect of that guilty plea, it is no longer the law.[3] Moreover, insofar as

---

[3] ORS 131.525(2) does not eliminate the constitutional jeopardy effect under Article I, section 12, of a guilty plea which arises when the separate prosecutions are for the "same offence." *State v. Farley, supra,* 301 Or at 671.

our *Farley* decision bears on the *statutory* jeopardy effect of the guilty plea, the state's reliance on it is misplaced, because ORS 131.525(2) does not apply under the facts here. Defendant here did not plead guilty to the first indictment until several months after she had been arraigned on the second indictment. Accordingly, she did not have the opportunity, as the defendant did in *Farley,* to move within 30 days after arraignment on the second indictment to vacate her guilty plea. ORS 131.525(2) does not apply unless a defendant has the opportunity to move to vacate the prior plea of guilty or resulting judgment within thirty days after arraignment on the subsequent prosecution.[4]

■        Accordingly, if the two offenses are "based upon the same criminal episode" within the meaning of ORS 131.515(2), the guilty plea retained its *statutory* "jeopardy effect." They were not. ORS 131.505(4) defines "criminal episode" as

> "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

Oregon courts have applied various "tests" to determine whether two or more offenses are based upon the same criminal episode. In *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975), the defendant moved to dismiss an indictment for criminal activity in drugs, arguing that his prior conviction for theft barred prosecution on the drug charge. Both charges were based on defendant's *possession* of contraband that the police had found during execution of a search warrant at his home. The Supreme Court stated that the term "same criminal episode" in ORS 131.515(2) and ORS 131.505(4) is synonymous with the term "same act or transaction" in ORS 132.560(2), relating to permissive joinder of charges. *Boyd* adopted for ORS 132.560(2) the definition of "same act or transaction" from *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973):

> "[T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a

---

[4] We do not need to decide whether a guilty plea to the first prosecution is "prior" if it is made after the arraignment in the second prosecution, but before the expiration of thirty days after that arraignment.

complete account of one charge cannot be related without relating details of the other charge."[5]

The court held that the two crimes of possession constituted a single criminal episode:

"Had defendant been charged with the actual theft of the television set on one occasion and the illegal purchase of drugs at another time, it would be clear enough that the events would be unrelated and therefore obviously not unitary. But the state did not charge defendant with the acts which eventually culminated in defendant's possession of the television set and the drugs. The charge is a single charge of illegal possession of goods at one time and place." *State v. Boyd, supra,* 271 Or at 570.

In *State v. Crumal,* 62 Or App 156, 659 P2d 977 (1983), we held that burglary, assault and criminal mischief charges were not based on the "same criminal episode" as the defendant's disorderly conduct at a hospital where he was taken approximately 45 minutes after he had allegedly committed the other crimes. In addition to the absence of relatedness of the charges, we noted that different times, places and victims were involved and that the defendant had more than one criminal objective. *See also State v. Gardner,* 71 Or App 590, 693 P2d 1303 (1985); *State v. Clifton,* 64 Or App 550, 669 P2d 353 (1983).

Here, the two charges are not "so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." The facts of each charge can be explained without drawing upon the facts of the other. Moreover, the two incidents were not contemporaneous; nearly four hours had elapsed between the first and second deliveries. Furthermore, defendant's conduct was not directed to the accomplishment of a single criminal objective. As the Supreme Court noted in *State v. Kessler,* 297 Or 460, 465, 686 P2d 345 (1984):

"[T]he test of a single criminal objective is no panacea. People have goals for the long, medium, or short term, and the

---

[5] The court in *Boyd* recognized that the *Fitzgerald* test "is not * * * broad enough to cover all factual situations where the double jeopardy principle would require joinder." 271 Or at 566 n 5; *see also State v. Gardner,* 71 Or App 590, 595, 693 P2d 1303 (1985).

objective of the immediate act often is pursued as a step toward a more distant goal."

Defendant's "distant goal" was to "fill a customer's order." Nonetheless, she committed two discrete criminal offenses. Two deliveries of drugs separated by a four hour period are not a "single criminal episode" within the meaning of ORS 131.515(2) just because the agent who received the drugs had initially ordered a single quantity.[6] Although defendant may have had the *same* objective in making each delivery (to receive payment for delivering illegal drugs), her objective was not a *single* one. It would not make sense to hold that a defendant can convert a number of deliveries over a period of time into a single criminal episode by announcing in advance an intention to deliver a large quantity.

■ The separate prosecutions also do not violate Article I, section 12, which provides that "[n]o person shall be put in jeopardy twice for the same offence." In *State v. Ellison,* 301 Or 676, 725 P2d 363 (1986), the defendant was stopped by the police for a traffic infraction and falsely identified himself. He was indicted for driving while suspended after his true name and license suspension were discovered. He pled guilty to the false name charge and moved to dismiss the DWS indictment. The trial court denied the motion, and we affirmed without opinion. The Supreme Court held that the separate prosecutions for driving while suspended and giving a false name to a police officer were not for the "same offence" within the meaning of Article I, section 12:

> "For constitutional purposes, as distinct from ORS 131.515(2), * * * giving the false identification was a separate offense from unlawful driving. *The two acts did not occur simultaneously * * *;* defendant had been stopped and was no longer driving when he gave the false name. *Also, defendant's acts did not pursue a single objective;* the objective of trying to lie himself out of the punishment for driving arose after he was caught and was not the same as the objective of driving in the first place." 301 Or at 679. (Emphasis supplied.)

---

[6] Defendant had told the agent during their May 7 telephone conversation that she had only one-half gram of cocaine but that she could get the rest the following day. Accordingly, she contemplated making separate deliveries before she delivered the first one-half gram. It is not significant that the first delivery was "short" and that the second delivery included an additional amount to make up the shortage. We do not decide whether the second delivery would have been part of the same criminal episode had it consisted only of the amount necessary to make up the shortage.

On the other hand, in *State v. Farley, supra,* the Supreme Court held that the defendant's conviction on the DWS charge *was* for the "same offence" as the DUII conviction:

> "The present defendant's single forbidden act was driving a car. * * * Intoxication and lacking a license indeed are elements of separate statutes that the defendant's single act of driving may have violated, but he cannot be twice put in jeopardy for the same act of driving if we are to preclude harassment by successive prosecutions against which the guarantee is directed." 301 Or at 675.

Here, defendant's acts were not simultaneous. They were not directed to a single criminal objective. As in *Ellison,* defendant committed two offenses.[7]

Affirmed.

---

[7] Although our constitutional and statutory analyses are similar, we do not, in light of *State v. Ellison, supra,* and *State v. Farley, supra,* imply that the statutory term "single criminal episode" and the constitutional term "same offence" have the same meaning. *See State v. Crumal, supra; State v. Hunter,* 58 Or App 99, 647 P2d 943 (1982), *rev den* 294 Or 391 (1983).