Christopher Brian MARQUEZ,
Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Supreme Court Case No. 11SC55

Supreme Court of Colorado.

September 23, 2013.

Rehearing Denied Oct. 15, 2013 *

* Justice Boatright would grant the petition.

Attorney for Petitioner: Hopkins Law LLC, James W. Hopkins, Loveland, Colorado

Attorneys for Respondent: John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado

JUSTICE COATS delivered the Opinion of the Court.

¶ 1 Marquez sought review of the court of appeals' judgment in *People v. Marquez,* No. 08CA2326, 2010 WL 5490008 (Colo.App. Dec. 23, 2010) (not published pursuant to C.A.R. 35(f)), which affirmed the district court's imposition of consecutive sentences for two crime-of-violence convictions. Finding that both crimes of violence arose out of the same incident, the district court concluded that despite its inclination to do otherwise, it was statutorily required to order the defendant's two crime-of-violence sentences to be served consecutively, and the court of appeals affirmed.

¶ 2 Because the phrase "arising out of the same incident," as that phrase appears in section 18–1.3–406, C.R.S. (2013), is a reference to, and has the same meaning as, the phrase "arising from the same criminal episode," in section 18–1–408(2), C.R.S. (2013), and because the record in this case establishes that the crimes of violence of which Marquez was convicted were not "based on the same act or series of acts arising from the same criminal episode," as we have previously construed that language in the latter statute, the district court was not required to impose consecutive sentences. Rather, it was not only permitted but in fact required to exercise its discretion concerning the imposition of consecutive or concurrent sentences. The judgment of the court of appeals is therefore reversed, and the case is remanded with directions to return the matter to the district court for resentencing.

### I.

¶ 3 Christopher Brian Marquez was convicted at a single trial of attempted aggravated robbery, a statutorily designated crime of violence; second degree assault, found by the jury to have been committed as a crime of violence under the circumstances of this case; and two counts of felony menacing. Mar-

quez was also found to be an habitual criminal requiring sentences to triple the maximum of the presumptive range for each of his crimes. The district court sentenced Marquez to concurrent terms of imprisonment for his felony menacing convictions, which it also ordered to be served concurrently with his crime-of-violence sentences, but it ordered the defendant's two crime-of-violence sentences to be served consecutively. After concluding that both crimes of violence were committed as part of a single "crime spree," the district court felt compelled by the statutory provisions governing habitual criminals and multiple crimes of violence arising out of the same incident to impose consecutive 48–year sentences.

¶ 4 There was evidence at trial from which the trier of fact could conclude that on April 21, 2007, about ten minutes after midnight, the defendant approached a man in the restroom of a bar and demanded money or drugs from him. When the man refused, the defendant struck the man in the mouth, breaking his jaw. Within the next forty minutes, approximately two blocks away, the defendant robbed, at gunpoint, a second man of his shoes and cell phone and fled the scene in a van.[1] Some eight hours later and about ten blocks away, the defendant then knocked on a house door and accosted the homeowner with a gun. Finally, after about three more hours and several more blocks away, the defendant entered a home that was under renovation and attempted to rob the man working inside at gunpoint.[2]

¶ 5 Marquez raised a number of challenges to his sentence, all of which were rejected by the intermediate appellate court. We granted his petition for a writ of certiorari solely to consider whether the district court erred in concluding that it lacked the discretion to impose concurrent sentences for his two crime-of-violence convictions.

1. The jury acquitted the defendant of all charges stemming from this incident.

2. Initially, both the assault at the bar and the robbery attempt of the man getting out of his car forty minutes later were brought as a separate prosecution. However, before trial, the prosecution moved to join the two cases in accordance

## II.

¶ 6 We have long held that in the absence of legislation to the contrary, sentencing courts in this jurisdiction have the inherent power to order sentences for different convictions to be served either consecutively or concurrently. See *Qureshi v. Dist. Court,* 727 P.2d 45, 46–47 (Colo.1986); *see also People v. Self,* 200 Colo. 406, 408, 615 P.2d 693, 695 (1980) (citing to ABA Standards Relating to Sentencing Alternatives and Procedures). The district court below made clear that it considered its discretion in this regard to be restricted by a provision of section 18–1.3–406(1)(a) of the revised statutes, added in 1985 as part of a broader sentencing Act, which effectively doubled allowable felony sentences and increased terms of parole. See House Bill 85–1320, 1985 Colo. Sess. Laws 647. The provision in question mandated that a "person convicted of two separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently." *Id.* (codified at section 16–11–309, C.R.S. (1985)). The particular statutory language at issue has remained unaltered, but for a 1988 amendment expanding the statute's consecutive sentence mandate for "two separate crimes of violence" to include "two or more separate crimes of violence," House Bill 88–148, 1988 Colo. Sess. Laws 679; *see also Robles v. People,* 811 P.2d 804 (Colo.1991), and the general reorganization and renumbering of the jurisdiction's sentencing provisions in 2002, House Bill 02–1046, 2002 Colo. Sess. Laws 1365, 1403 (recodified at section 18–1.3–406, C.R.S. (2013)).

¶ 7 Precisely what constitutes a single "incident" and precisely when two or more crimes of violence must be considered to have arisen out of the same incident are therefore first and foremost matters of statutory interpretation. As we have often indi-

with the permissive joinder provision of the Colorado Rules of Criminal Procedure. See Crim. P. 8(a)(2). Finding that all of the conduct alleged by the prosecution constituted one criminal episode, the district court granted the prosecution's motion.

cated, a statute must be interpreted according to the legislative intent expressed in the language actually chosen by the legislature. See *Dep't of Transp. v. Gypsum Ranch Co.,* 244 P.3d 127, 131 (Colo.2010). Should that language admit of more than one reasonable understanding, it is considered to be ambiguous. *Id.* In that event, a number of intrinsic and extrinsic aids to construction have developed to assist in resolving the ambiguity and determining which of the various reasonable interpretations is the appropriate one. *Id.*

¶ 8 It is widely accepted that where the legislature has not expressly defined a statutory term or otherwise limited its meaning, that term must be given its ordinary meaning. *Taniguchi v. Kan Pacific Saipan, Ltd.,* — U.S. ——, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012); *Robbins v. People,* 107 P.3d 384 (Colo.2005). Because, however, terms frequently have more than one ordinary meaning, or at least more than one shading or nuance of meaning, and because even a dictionary definition broad enough to encompass a particular sense of a word does not establish that the term is *ordinarily* understood in that sense, *Taniguchi,* 132 S.Ct. at 2003, the precise meaning embodying legislative intent must often be determined by reference to other considerations, like context and purpose, *seeCurious Theatre Co. v. Colo. Dep't of Pub. Health & Env't,* 220 P.3d 544, 549 (Colo.2009). In particular we have held that in the absence of some express indication to the contrary, a term or provision that is part of a greater statutory scheme should be interpreted, to the extent possible, harmoniously with the other provisions and purpose of that scheme. *Gypsum Ranch Co.,* 244 P.3d at 131; *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 448 (Colo. 2005); *see also Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 & n.6 (Colo.1991). Often light can be shed on the purpose or motivation behind statutory amendments by considering the timing of those amendments in relation to other historical developments, including judicial interpretations of related aspects of the scheme, *Frank M. Hall & Co.,* 125 P.3d at 448; *City of Ouray v. Olin,* 761 P.2d 784, 788–89 (Colo.1988), and even the explanations of sponsors, *Vensor v. People,* 151 P.3d 1274, 1279 (Colo.2007) ("While by no

means conclusive, the testimony of a bill's sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent.").

¶ 9 The legislature has not statutorily defined "incident" in this context as a term of art. In context, and particularly in light of its choice to modify "incident" by the word "same," there can be little question that the term is intended here in its generally accepted sense of an occurrence considered to be a single, rather than more than one, happening or unit of experience. *Webster's Third New International Dictionary* 1142 (1976) (defining incident as "an occurrence of an action or situation felt as a separate unit of experience"). As we have frequently observed in the past, however, without reference to a particular organizing principle or objective to be served by treating particular acts, occurrences, or circumstances as a given unit or entity, some rationale can virtually always be devised for combining them in such a manner as to form an even greater unit or, conversely, for segregating them into multiple, even smaller units. *See, e.g.,Gognat v. Ellsworth,* 259 P.3d 497, 502 (Colo.2011) (assessing whether different pieces of information are related as constituent elements of a single trade secret); *In re Title, Ballot Title, & Submission Clause for 2009–2010 No. 91,* 235 P.3d 1071, 1077 (Colo.2010) (assessing whether constitutional initiative included more than one subject); *People v. Abiodun,* 111 P.3d 462 (Colo.2005) (assessing whether multiple acts in chain of drug distribution constitute single unit of prosecution); *Woellhaf v. People,* 105 P.3d 209 (Colo.2005) (assessing whether disjunctive series in definition of "sexual contact" evidenced intent to create single or multiple offenses of sexual assault on child).

¶ 10 As the prosecution acknowledges in its Answer, the word "incident" is often used interchangeably with, or as a synonym for, "episode." *SeeWebster's New Universal Unabridged Dictionary* 966 (1996). In phraseology closely paralleled by that of section 18–1.3–406, the legislature had already long used the phrase "arising out of the same criminal episode" to designate the "act or series of acts" for which a defendant would be entitled

to demand that he be proceeded against in a single prosecution, and with regard to which his punishment might, depending upon the evidence offered to prove his offenses, be limited to concurrent sentences. *See* § 18–1–408(2)–(4).[3] Undoubtedly, for these or similar reasons, we have in the past simply equated the terms, without feeling obliged to articulate any particular justification for doing so. *E.g.,* *People v. Fuller,* 791 P.2d 702, 705 (Colo.1990) ("The General Assembly could have rationally decided that violent crimes committed as part of the same *incident* pose a greater threat to society than the same criminal conduct committed separately in different violent criminal *episodes.*" (emphasis added)). Beyond their interchangeability in common parlance and parallel usage by the legislature, however, other factors also imply a legislative intent to use the terms synonymously in this context. Not least among them stand the legislature's simultaneous amendment of the mandatory concurrent sentence requirement of section 18–1–408(3) for crimes arising from the same episode and the pointed committee remarks of a sponsor explaining his motivation for advancing the bill in the first instance.

¶ 11 On their face, a number of the enactments of the 1985 legislative session reflect legislative dissatisfaction with then-existing felony sentencing provisions and practices. *E.g.,* House Bill 85–1320, § 7, 1985 Colo. Sess. Laws 652 (amending section 18–1–105 by doubling the maximum presumptive sentence for all classes of felonies); § 4, 1985 Colo. Sess. Laws 648 (amending section 17–22.5–303 by increasing the period of time a felon could be released to parole supervision, as well as the period of incarceration for which he could be returned following parole revocation); § 1, 1985 Colo. Sess. Laws 647 (amending section 16–11–309(1)(a), currently section 18–1.3–406(1)(a), to mandate consecutive sentences for certain crimes of violence). In addition to H.B. 85–1320's consecutive sentence mandate, the General Assembly, in the same legislative session, also carved out an exception to the concurrent sentencing requirement of section 18–1–408(3), exempting offenses involving multiple victims in the same criminal episode. See Senate Bill 85–97; 1985 Colo. Sess. Laws 661 (amending section 18–1–408(3) by returning discretion to sentencing court to impose consecutive sentences for crimes committed against different victims, even though they arose from the same criminal episode and were proved by the same evidence). Both the crime-of-violence and multiple victims sentencing provisions clearly altered the reach of the mandatory concurrent sentence limitation for offenses arising from the same episode, but in different ways and with regard to different, if sometimes overlapping, convictions.

¶ 12 Although certain crimes committed in particularly violent ways had already been

---

3.  Section 18–1–408(2)–(4) reads in full:

    (2) If the several offenses are actually known to the district attorney at the time of commencing the prosecution and were committed within the district attorney's judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution; except that, if at the time jeopardy attaches with respect to the first prosecution against the defendant the defendant or counsel for the defendant actually knows of additional pending prosecutions that this subsection (2) requires the district attorney to charge and the defendant or counsel for the defendant fails to object to the prosecution's failure to join the charges, the defendant waives any claim pursuant to this subsection (2) that a subsequent prosecution is prohibited.

    (3) When two or more offenses are charged as required by subsection (2) of this section and they are supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by subsection (2) of this section, the sentences imposed shall run concurrently; except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

    (4) When a defendant is charged with two or more offenses based on the same act or series of acts arising from the same criminal episode, the court, on application of either the defendant or the district attorney, may order any such charge to be tried separately, if it is satisfied that justice so requires.

singled out for special treatment by section 16–11–309, until the enactment of H.B. 85–1320 multiple crimes of violence, like separate convictions generally, remained subject to trial court concurrent/consecutive sentencing discretion, as well as the specific concurrent sentencing mandate of section 18–1–408(3). Significantly, however, in altering this situation H.B. 85–1320 did not go so far as to mandate consecutive sentences for all convictions subject to crime-of-violence sentencing, and instead directed itself only to crime-of-violence convictions "arising out of the same incident." In *Fuller*, we accepted the possibility of a rational basis for the disparate treatment of those crimes of violence committed as part of the same incident and all other crimes of violence, but we made no attempt to specify what that rational basis might actually have been. 791 P.2d at 705.

¶ 13 In his remarks before the House Judiciary Committee, a sponsor of the bill gave a more specific indication of what was intended in this regard. In explaining his bill, Representative Mielke expressly attributed this crime-of-violence provision to his idea to counter a perceived tendency on the part of sentencing courts to impose concurrent sentences for multiple convictions, even when those convictions were subject to special crime-of-violence sentencing. See *Hearing on H.B. 85–1320 before the H. Judiciary Comm.*, 55th Gen. Assembly, 1st Sess. (Feb. 21, 1985, at 3:22.06 p.m.) ("I also came up with an idea I had for another bill–the problem with the crimes of violence [is] that

judges in the justice system *tend to* sentence those to concurrent sentences, and if someone commits two crimes of violence, they still are only sentenced for four years rather than consecutive sentences." (emphasis added)).[4] Especially when considered in conjunction with the legislature's simultaneous focus on relaxing the mandatory joinder provisions of section 18–1–408, these remarks strongly suggest that the crime-of-violence provision at issue here was motivated less by a judgment that related crimes of violence merit harsher punishment than unrelated crimes of violence, than simply by the perception that trial courts tend to treat multiple counts of which a defendant is convicted and sentenced in the same prosecution, even if the legislature has mandated that they be subject to special crime-of-violence sentencing procedures, as undeserving of cumulative punishments at all. Understood from this perspective, the legislature's limitation to offenses "arising out of the same incident" is most naturally explained as including only those offenses joined in the same prosecution.

¶ 14 Separate criminal counts may, of course, be discretionarily joined whenever they involve offenses of a similar character or offenses that are connected or based on acts constituting parts of a common scheme or plan, see Crim. P. 8(a)(2),[5] and perhaps for this reason, the court of appeals has at times, as it did in this case, used language more suggestive of the looser standard for permissive joinder as the appropriate test for man-

---

4. In his dissenting opinion in *Robles*, Justice Vollack quoted a broader portion of Representative Mielke's statement for a different purpose. Although he transcribed the highlighted words as "can," upon closer inspection, with digital equipment, Representative Mielke clearly said "tend to." 811 P.2d at 809.

5. Crim. P. 8(a) reads in full:

   **(a) Joinder of Offenses.**
   (1) **Mandatory Joinder.** If several offenses are actually known to the prosecuting attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the prosecuting attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any such offense not thus joined by separate count

   cannot thereafter be the basis of a subsequent prosecution; except that, if at the time jeopardy attaches with respect to the first prosecution against the defendant, the defendant or counsel for the defendant actually knows of additional pending prosecutions that this subsection (a)(1) requires the prosecuting attorney to charge and the defendant or counsel for the defendant fails to object to the prosecution's failure to join the charges, the defendant waives any claim pursuant to this subsection (a)(1) that a subsequent prosecution is prohibited.
   (2) **Permissive Joinder.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

datory consecutive crime-of-violence sentencing, *see, e.g.,People v. Trujillo,* 860 P.2d 542, 548 (Colo.App.1992) (citing *People v. Beyer,* 768 P.2d 746, 748 (Colo.App.1988), for the proposition that an incident may "logically include a series of acts committed in close proximity or a chain of events forming a part of a schematic whole," and finding five robberies over the course of a month to constitute a single incident). There nevertheless remain sound reasons for instead equating "incident" with the more narrow "criminal episode" standard of mandatory joinder. Apart from the fact that the legislature was simultaneously focused on the effects of the mandatory joinder provision of section 18–1–408 and that no permissive joinder rule yet existed for the 1985 amendment to have used as a referent, see *Court Business,* 20 The Colorado Lawyer 269 (Feb. 1991) (reporting adoption of Crim. P. 8(a)(2), effective March 1, 1991), it is also unlikely that the legislature would have elected to effectively double a defendant's sentence on the basis of joinder which, if not entirely fortuitous, at least resulted from discretionary choices made for tactical reasons unrelated to culpability or jeopardy. Moreover, such an interpretation would have the perverse effect of providing an incentive for prosecutors to join crime-of-violence charges whenever permissible to gain a sentencing advantage and an equally strong incentive for defendants to oppose such joinder, regardless of its merits in terms of expedition and convenience in the presentation of the case.

¶ 15 Instead, in light of the general interchangeability of the terms, parallel usage by the legislature, the perceived judicial tendency the provision was apparently designed to circumvent, and our already-existing case law giving content to the term "criminal episode," we find that the phrase "arising out of the same incident" in section 18–1.3–406 was not intended to convey any meaning different from "arising from the same criminal episode" in section 18–1–408.

### III.

¶ 16 Although circumscribing a single "criminal episode" for purposes of mandatory joinder and mandatory concurrent sentencing presents the same kinds of problems as determining the range of acts constituting a single "incident" for purposes of mandatory consecutive sentencing, the former, unlike the latter, has been the subject of litigation and judicial interpretation in this court for decades. Working through a multiplicity of fact patterns and policy considerations, in a lengthy series of cases, this court has at times emphasized the importance of such factors as time, place, circumstances, and schematic wholeness. *See, e.g.,People v. Tulipane,* 192 Colo. 476, 478–79, 560 P.2d 94, 96 (1977); *Brutcher v. Dist. Court,* 195 Colo. 579, 581–82, 580 P.2d 396, 398 (1978); *Jeffrey v. Dist. Court,* 626 P.2d 631 (Colo.1981); *Corr v. Dist. Court,* 661 P.2d 668 (Colo.1983); *People v. Rogers,* 742 P.2d 912 (Colo.1987); *People v. Miranda,* 754 P.2d 377, 380 (Colo. 1988).

¶ 17 We have also, however, related this host of diffuse considerations more specifically to the purposes of mandatory joinder. In this regard we have made clear that a criminal episode for purposes of mandatory joinder in a single prosecution, and therefore mandatory concurrent sentencing when the separate offenses arising from such an episode are actually proved by identical evidence, contemplates all those offenses, but only those offenses, arising either from the same conduct or connected in such a manner that their prosecution will involve substantially interrelated proof. *Miranda,* 754 P.2d at 380; *see alsoIn re Greene,* 2013 CO 29, ¶ 13, 302 P.3d 690. Interrelationship of proof, we have reasoned, properly focuses a trial court's inquiry on the degree to which a defendant is harassed and judicial resources wasted by successive prosecutions, and by contrast, where the proofs of the charges are not interrelated, prejudice to the defendant caused by separate prosecutions will be minimal. *Miranda,* 754 P.2d at 380. Rather than minimizing the significance of factors like time, location, and schematic wholeness in the overall calculus, in our later and more refined efforts we have described with greater particularity the manner in which these factors bear significance, observing that crimes committed simultaneously or in close sequence, crimes that occur in the same or

closely related place, and acts that form part of a schematic whole, generally are crimes that involve interrelated proof. *Id.* at 381.

¶ 18 At the same time, we have explained that the term "same conduct" in this context refers to "a single act or single behavioral incident that results in the commission of more than one offense," *id.*[6] and that "[p]roof of different crimes is interrelated if the proof of one crime forms a substantial portion of proof of the other," *Rogers,* 742 P.2d at 919. Applying the concept of a "single behavioral incident," we found little difficulty in *Miranda* dismissing the suggestion that acts committed six days apart could arise from the same conduct. 754 P.2d at 381. And with regard to interrelatedness of proof, we there emphasized, with examples of similar crimes separated by even shorter periods of time, that virtually identical criminal acts, including those involving the identical parties, do not for that reason alone involve substantially interrelated proof. *Id.* at 382 (citing *People v. Taylor,* 732 P.2d 1172, 1180 n.8 (Colo.1987) (finding possession of and conspiracy to distribute cocaine separated by one day not same episode), and *State v. Hathaway,* 82 Or.App. 509, 728 P.2d 908, 912 (1986) (finding distribution of cocaine to same undercover agent separated by four hours not same episode)).

¶ 19 In the instant case, it is unclear from the record how the trial court understood the limits of the term "incident," or whether it focused on the difference between the standards of mandatory and permissive joinder at all. In their motion to join the two separately-filed crimes of violence for which the defendant was ultimately sentenced, the People expressly referenced Crim. P. 8(a)(2), the permissive joinder provision, and expressly argued, in the language of that provision, that the offenses were joinable because they were "of the same or similar character or [were] based on two or more acts or transactions connected together or constituting part of a common scheme or plan." In granting the motion, although the trial court at one point characterized these offenses as "one

criminal episode" and referenced "the first paragraph of 8(a)," the mandatory joinder provision, in the next breath it expressed its belief that paragraph 8(a) involved "cases of the same or similar character," which it then accurately identified as involving "the issue of permissive joinder." In imposing the sentence, the court offered no further explanation why it considered the crimes to have arisen out of the same incident, other than to indicate that it considered 48 years an appropriate sentence because, among other things, the behavior that occurred during the critical 12–hour period literally amounted to a "crime spree."

¶ 20 In any event, whatever the trial court may have precisely had in mind, nothing in the record supports a finding that these two crimes of violence arose from the same criminal episode. They could not have arisen from the same conduct because each clearly involved a different act, and the different acts from which each offense arose, separated as they were by 12 hours and involving different methods of commission (one with a fist and one with a gun), different victims, and different locations, could not reasonably be characterized as resulting from a "single behavioral incident." Similarly, they were not connected in such a manner that their prosecution would involve substantially interrelated proof because the proof of neither could have formed a substantial portion of the proof of the other. Whether or not all the crimes committed by the defendant during the critical 12–hour period shared a common motivation, or even resulted simply from the same, continuing malevolent humor, they shared no act, mental state, result, circumstance, or defense as to which proof of one would form a substantial portion of the proof of the other. *Cf. Brutcher,* 580 P.2d at 398 (finding disregarding an officer, eluding and assault of same officer within minutes of each other to be different criminal episodes, and cited as illustrative in *Rogers,* 742 P.2d at 918).

¶ 21 The district court was therefore not statutorily stripped of its discretion to sen-

---

**6.** In *Miranda* we suggested that the reckless operation of a motor vehicle resulting in injury or death to two or more persons would be an exam-

ple of behavior that would constitute the same conduct. 754 P.2d at 381.

tence either concurrently or consecutively, as it thought, and was, in fact, required to exercise that discretion. In light of the court's explicit statements to the effect that it considered a 48–year sentence to be appropriate for such a "crime spree," and its decision to sentence concurrently where it believed it had the choice to do so, it appears likely that the sentencing court would choose not to impose consecutive sentences once the extent of its discretion became clear. Because the district court left no doubt that its discretion in the matter remained unexercised, the case must be remanded for exercise of that discretion. Because, however, the defendant's other assignments of sentencing error were rejected by the court of appeals and were not accepted for review by this court, the scope of resentencing on remand is limited to the question of concurrent or consecutive sentencing for the defendant's two crime-of-violence convictions.

## IV.

¶ 22 Because the phrase "arising out of the same incident," as that phrase appears in section 18–1.3–406, C.R.S. (2013), is a reference to, and has the same meaning as, the phrase "arising from the same criminal episode," in section 18–1–408(2), C.R.S. (2013), and because the record in this case establishes that the crimes of violence of which Marquez was convicted were not "based on the same act or series of acts arising from the same criminal episode," the judgment of the court of appeals is reversed, and the case is remanded with directions to return the matter to the district court for resentencing consistent with this opinion.

JUSTICE BOATRIGHT concurs in part and dissents in part, and JUSTICE RICE and JUSTICE EID join in the concurrence in part and the dissent in part.

JUSTICE BOATRIGHT, concurring in part and dissenting in part.

¶ 23 I agree with the majority that the phrase "arising out of the same incident" in section 18–1.3–406, C.R.S. (2013) equates to the phrase "arising from the same criminal episode" in section 18–1–408(2), C.R.S. (2013). I believe, however, that the trial court is in a better position than this court to apply the test for measuring whether crimes constitute the same criminal episode to the facts. As a result, I would issue a remand that is broader in scope than the majority. Instead of remanding the matter to the trial court on the limited issue of whether the defendant's sentences should be concurrent or consecutive, I would also remand the issue of whether the crimes for which the defendant was convicted constitute the same criminal episode. Accordingly, I concur in part and respectfully dissent in part.

¶ 24 The trial court conducted several pretrial hearings, including two hearings regarding evidentiary matters, a three day jury trial, and a habitual criminal sentencing hearing. As a result, the trial court is in a superior position to this court to accurately determine if the crimes are a result of a "singular behavioral incident." Maj. op. ¶ 18. The trial court can more accurately determine if the defendant's acts share a common motivation, mental state, result, circumstance, or defense despite different victims, locations, and weapons. *Id.* ¶ 20. Finally, the trial court can more accurately determine if the proof of one crime would form a substantial portion of the proof of another. *Id.* As we have noted for purposes of making credibility determinations, "[a] cold record is a poor substitute for live testimony." *People v. Scott,* 198 Colo. 371, 373, 600 P.2d 68, 69 (1979).

¶ 25 In asserting that the matter should be remanded to the trial court I am not expressing an opinion as to how the trial court should resolve it. It is the process from which I dissent, not the conclusion. The trial court should be given the discretion to determine whether the defendant's crimes arose from the same criminal episode.

¶ 26 Hence, I concur in part and respectfully dissent in part.

I am authorized to state that JUSTICE RICE and JUSTICE EID join in the concurrence in part and dissent in part.