Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 17, 2016

**2016 CO 70**

**No. 13SC873, <u>Schneider v. People</u>—Sentencing—Constitutional Law.**

Schneider sought review of the court of appeals' judgment affirming his convictions and consecutive sentences for two counts of sexual assault. The jury returned guilty verdicts on one count of sexual assault of a physically helpless victim and another count of sexual assault by causing submission of a victim by means of sufficient consequence reasonably calculated to cause submission against the victim's will, based on evidence of a single, continuous penetration of the same victim; and the trial court imposed mandatory consecutive sentences for conviction of separate crimes of violence arising out of the same incident. The court of appeals upheld the two sexual assault convictions against challenges of jeopardy and merger, on the grounds that the defendant was convicted of violating two separate statutes; and it upheld the trial court's order of consecutive sentences, on the grounds that consecutive sentences were mandated by statute unless both convictions were supported by identical evidence, which it reasoned could not be the case where the evidence required to prove each sexual assault charge was inconsistent with that required to prove the other.

The supreme court affirms the judgment of the court of appeals, although on slightly different grounds. Although section 18-3-402, C.R.S. (2016), proscribes a single crime of "sexual assault," which can be committed in either of the two ways charged in this case, the evidence at trial was sufficient to support a jury finding that the defendant committed that single crime of "sexual assault" twice against the same victim; and even if a sentencing court would be relieved of its obligation to impose consecutive sentences for separate crimes of violence arising out of the same incident, when both crimes of violence have been supported by identical evidence, and instead be obligated to impose concurrent sentences, nevertheless both convictions in this case were not supported by identical evidence.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 70

### Supreme Court Case No. 13SC873
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA2343

**Petitioner:**

Fritz Daniel Schneider,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
October 17, 2016

**Attorneys for Petitioner:**
Mulligan Breit, LLC
Patrick J. Mulligan
  *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Katharine Gillespie, Assistant Attorney General
  *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.

¶1     Schneider sought review of the court of appeals' judgment affirming his convictions and consecutive sentences for two counts of sexual assault. The jury returned guilty verdicts on one count of sexual assault of a physically helpless victim and another count of sexual assault by causing submission of a victim by means of sufficient consequence reasonably calculated to cause submission against the victim's will, based on evidence of a single, continuous penetration of the same victim; and the trial court imposed mandatory consecutive sentences for conviction of separate crimes of violence arising out of the same incident. The court of appeals upheld the two sexual assault convictions against challenges of jeopardy and merger, on the grounds that the defendant was convicted of violating two separate statutes; and it upheld the trial court's order of consecutive sentences, on the grounds that consecutive sentences were mandated by statute unless both convictions were supported by identical evidence, which it reasoned could not be the case where the evidence required to prove each sexual assault charge was inconsistent with that required to prove the other.

¶2     Although section 18-3-402, C.R.S. (2016), proscribes a single crime of "sexual assault," which can be committed in either of the two ways charged in this case, the evidence at trial was sufficient to support a jury finding that the defendant committed that single crime of "sexual assault" twice against the same victim; and even if a sentencing court would be relieved of its obligation to impose consecutive sentences for separate crimes of violence arising out of the same incident, when both crimes of violence have been supported by identical evidence, and instead be obligated to impose concurrent sentences, nevertheless both convictions in this case were not supported by

2

identical evidence. Although on slightly different grounds, the judgment of the court of appeals is therefore affirmed.

## I.

¶3 Fritz Schneider was charged with one count of felony 3 sexual assault (by means sufficient to cause submission against the victim's will), as proscribed at section 18-3-402(1)(a), C.R.S. (2016), one count of felony 4 sexual assault (physically helpless victim), as proscribed at section 18-3-402(1)(h), one count of misdemeanor assault, and two counts of committing a crime of violence, all arising from the same encounter with the victim on the night of August 6–7, 2007. The jury returned verdicts of guilty on all five counts, and the district court sentenced him to consecutive terms of ten years to life and five years to life for the sexual assaults, with a concurrent term for the misdemeanor assault.

¶4 The evidence at trial indicated that on August 6, 2007, the 16-year-old victim and her 37-year-old female friend returned from a party to the friend's apartment, accompanied, at the friend's invitation, by the 28-year-old defendant. When the three arrived at the apartment, the defendant and victim's friend got into bed together, and the victim, who was extremely intoxicated, went to sleep, fully clothed, on a futon in the same room. At some point during the night, the victim ran to a nearby apartment, alleging that she had been raped and seeking help from friends living there, who contacted the police and took her to the hospital. At the emergency room, an examination revealed evidence of several bite marks on her body, multiple additional abrasions, injuries where her earrings had apparently been ripped from her ears, and

tears in her vaginal tissue. DNA from the bite marks and the victim's cervix and vagina were later matched to the defendant.

¶5 When interviewed by the police, both at the scene and the next afternoon at the police station, the defendant denied having any sexual contact with the victim; however, at trial, after the presence of his DNA had been confirmed, he asserted the affirmative defense of consent. He testified that the victim actually initiated the sexual encounter and explained that during the encounter, the victim bit him, in response to which, assuming she was "into that," he bit her back.

¶6 At the defendant's trial, some four years after the encounter, the victim testified that she did not remember the rape, but she remembered waking up with her pants off and that her vagina was burning and her earrings had been ripped from her ears. Although she denied remembering the rape, she nevertheless later testified in response to a direct question that after the defendant stopped, she ran to the apartment of some friends for help. In addition to her trial testimony, however, the court admitted an interview with the victim at the emergency room on the night of the encounter. In that interview, while not clear about the precise sequence of events, the victim unequivocally stated that she had been raped. While she conceded being extremely drunk and blacking out, she recalled the defendant's biting her neck and penetrating her, and she expressly stated that at some point she said, "[S]top, stop . . .,"and prayed for help.

¶7 At the sentencing hearing, the defendant argued for mandatory concurrent sentences for the two sexual assault convictions, on the grounds that they were

4

supported by identical evidence.  In response, the prosecutor again made clear the People's theory that at the time the assault began, the victim was unconscious and was therefore physically helpless, and that during the course of the assault she awoke and the defendant then used physical force to continue the assault.  The prosecutor argued that the jury found both that the victim was physically helpless, unable to resist, and that at some point during the assault the defendant used means sufficient to overcome her will, which amounted to distinctly different evidence of two assaults, even though they occurred during one continuous event.

¶8    Among a number of other assignments of error, the defendant alleged on appeal that the trial court erred by not merging the two sexual assault verdicts into one conviction or, alternatively, by not imposing concurrent sentences.  With regard to the former contention, the court of appeals held simply that a criminal defendant may be convicted of multiple offenses arising out of a single transaction if he has violated more than one statute, and that sexual assault of a physically helpless victim, proscribed by section 18-3-402(1)(h), and sexual assault by causing submission of a victim by means of sufficient consequence reasonably calculated to cause submission against the victim's will, proscribed by section 18-3-402(1)(a), are two separate statutes.  With regard to the latter contention, it upheld the trial court's order of consecutive sentences on the grounds that consecutive sentences were mandated by statute unless both convictions were supported by identical evidence, which could not be the case where the evidence that was required to prove each sexual assault charge was inconsistent with that required to prove the other.

¶9 We granted the defendant's petition for writ of certiorari concerning the question whether his constitutional rights were violated by ordering consecutive sentences in this case, either because both counts were based on identical evidence or because the trial court erroneously applied the "same elements" test to resolve the defendant's double jeopardy claim.

## II.

¶10 As formulated by the defendant-petitioner and argued to us, the questions presented appear to intermingle at least three distinct doctrines, or questions: 1) whether the entry of judgments of conviction on both counts of sexual assault in this case violated the constitutional prohibition against twice placing a person in jeopardy for the same offense; 2) whether it violated statutory prohibitions against entering multiple convictions for the same conduct; and 3) even if entry of judgment of conviction on each count was not barred on either of these grounds, whether concurrent sentencing was nevertheless statutorily mandated. While related and at times overlapping, each involves a distinctly different inquiry.

¶11 For purposes of the constitutional prohibition against twice placing a person in jeopardy for the same offense, U.S. Const. amend. V, the Supreme Court has long indicated that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are actually two offenses or only one is whether each provision requires proof of an additional fact that the other does not. See Brown v. Ohio, 432 U.S. 161, 166 (1977) (explaining the test articulated in Blockburger v. United States, 284 U.S. 299 (1932)). For a time, the Court

6

characterized the Double Jeopardy Clause as protecting individuals from prosecution after either an acquittal or conviction of the same offense, and in addition, from being subjected to multiple punishments for the same offense, see North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled by Alabama v. Smith, 490 U.S. 794, 795 (1989); however, by 1983, it had clarified this articulation of the constitutional protection, specifying that with respect to cumulative sentences imposed at a single proceeding, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. Missouri v. Hunter, 459 U.S. 359, 366–69 (1983); see Whalen v. United States, 445 U.S. 684, 691–92 (1980); see also Lewis v. People, 261 P.3d 480, 481 (Colo. 2011) (summarizing this court's jurisprudence acknowledging this clarification and accepting it as the correct interpretation of the state constitutional jeopardy provision as well).

¶12 Beyond the constitutional guarantee, the General Assembly has included a number of provisions in the Colorado Criminal Code indicating its intent with regard to multiple convictions and punishments for the same or related conduct. See § 18-1-408, C.R.S. (2016). While the statute makes clear that a defendant may be prosecuted in this jurisdiction for every offense established by particular conduct, under circumstances specifically enumerated by the statute he may not be convicted of more than one such offense, see § 18-1-408(1), (5), including but not limited to the situation in which one of the offenses is included in the other according to what we have referred to as the "statutory elements test," the "strict elements test," or the "Blockburger test." See Lewis, 261 P.3d at 481; Meads v. People, 78 P.3d 290, 294 (Colo. 2003). In addition to

7

providing for the treatment of multiple charges based on the same conduct, however, section 408 also provides special direction for the treatment of offenses "based on the same act or series of acts arising from the same criminal episode," including a requirement that under specified circumstances such offenses must be prosecuted by separate counts in a single prosecution and when so charged, if they also are supported by identical evidence and do not involve multiple victims, that the sentences imposed upon conviction must run concurrently. § 18-1-408(2), (3).

¶13     As we have explained in greater detail elsewhere, see, e.g., People v. Abiodun, 111 P.3d 462, 465 (Colo. 2005), logically preliminary to the question whether one offense is the same as an ostensibly different offense, according to the strict elements test, lies dormant the question whether the legislature intended to create two separate offenses at all. Where the General Assembly proscribes conduct in different provisions of the penal code and identifies each provision by different designation or name, its intent to establish more than one offense is generally not an issue, and unless the elements of both offenses are the same or those of one offense are included within the other, its intent to permit separate punishments can be presumed. See Albernaz v. United States, 450 U.S. 333, 337–42 (1981). Where, however, alternate descriptions of criminal behavior are disjoined within a single section of the code and bear the same criminal name, a legislative intent to create different offenses and permit separate convictions and sentences for each is not so readily apparent and must be ascertained, if at all, by other considerations.

¶14 Finally, for purposes of the issues facing us today, the Double Jeopardy Clause clearly does not immunize a defendant from being separately punished for successive commissions of the same offense. Nevertheless, determining precisely when conduct supporting one commission of a particular offense is factually distinct from conduct supporting another commission of the same offense is not always so clear. In related contexts, we have identified various considerations, including temporal and spatial proximity, and the presence of intervening events or volitional departures, that will often be relevant in making this determination. See Quintano v. People, 105 P.3d 585, 591 (Colo. 2005); see also Woellhaf v. People, 105 P.3d 209, 219 (Colo. 2005). We have, however, never attempted to articulate a specific list of factors to be dispositive in every case, see Quintano, 105 P.3d at 592, for the simple reason that factual distinctness sufficient to support successive convictions is ultimately a function of the legislature's definition of the crime itself—what we, and the Supreme Court, have elsewhere referred to as its choice of an allowable unit of prosecution. See Sanabria v. United States, 437 U.S. 54, 69–70 (1978); Abiodun, 111 P.3d at 465 n.2, 470; see also Roberts v. People, 203 P.3d 513, 516–17 (Colo. 2009). The factual distinctness required for a second violation of the same offense can therefore be properly determined only by reference to the organizing principle of the offense in question. Abiodun, 111 P.3d at 470.

### III.

¶15 In conjunction with the July 2000 repeal of sections 18-3-402, C.R.S. (1999) ("Sexual assault in the first degree") and 18-3-403, C.R.S. (1999) ("Sexual assault in the second degree"), the elements of both offenses were substantially reenacted as section

9

402, under the heading of simply "Sexual assault," without separate appellations or specification as to degree of offense. See § 18-3-402, C.R.S. (2016). Subsection (1) of the current statute defines the offense of "sexual assault" as the concurrence of an actus reus—sexual intrusion or penetration—and mens rea—knowingly—when committed under any of eight circumstances, described in disjoined clauses designated (a)–(h). Id. Depending upon the existence of various additional circumstances concerning the act, the actor, or the victim, which are enumerated within the remainder of section 402 itself, "sexual assault" is now proscribed as either a class two, three, or four felony, or a class one misdemeanor. Id. In addition, this same statutory section limits the sentencing ranges available for conviction of class-one-misdemeanor and class-two-felony sexual assault, and expressly mandates that any person convicted of felony sexual assault committed on or after November 1, 1998 be sentenced in accordance with the Colorado Sex Offender Lifetime Supervision Act of 1998, codified at §§ 18-1.3-1001 to -1012, C.R.S. (2016).

¶16    Both the history and structure of section 402 strongly reflect a legislative intent to create a single offense of "sexual assault," with varying consequences based on separately enumerated classification and sentencing factors. Not only did the legislature combine, in a single section of the code and under the single title "sexual assault," what had previously been clearly distinct sexual offenses, found in separate sections of the code and specifically distinguished by name, but the classification and sentencing factors throughout the remainder of the section are also applied uniformly to all eight alternative sets of qualifying circumstances, all referred to simply as "sexual

10

assault." § 18-3-402. All share a common actus reus and mens rea, articulated in the statute only once, as in the definition of a single crime, and all eight qualifying sets of circumstances are structured in relation to each other as a disjunctive series, describing alternative ways of committing the crime designated "sexual assault." Id. Although these alternatives are separated by an organizational device—in this case letters of the alphabet—in light of the length and detail of each alternative clause, this usage is naturally explained as an attempt to enhance clarity and comprehensibility alone and implies virtually nothing about a legislative intent to treat each as a separate statute in itself.

¶17    Of equal if not greater significance, the eight alternative ways of committing "sexual assault" are not mutually exclusive but overlap in ways other than simply being related as general and specific prohibitions of the same conduct or as inchoate and completed acts, relationships that would permit no more than a single conviction in any event. See § 18-1-408(1), (5). Interpreting each of these eight alternative circumstances as a separate statute unto itself, as the court of appeals has done, could therefore permit more than one sexual assault conviction, despite the absence of any change in circumstances or factually distinct conduct whatsoever. Such an interpretation would necessarily imply a legislative intent, for instance, that inflicting intrusion or penetration on a victim who is both helpless, see § 18-3-402(h), and incapable of appraising the nature of her conduct, see id. § -402(c), or inflicting intrusion or penetration on an underage victim by force, see id. § -402(a), (e), would merit multiple convictions of "sexual assault."

¶18    Notwithstanding a controlling interpretation of section 402 as creating a single offense of "sexual assault," however, the nature of and differences among the eight alternative circumstances in which that crime of sexual assault can be committed nevertheless are significant in determining the gravamen of the crime and, correspondingly, in assessing whether conduct of the defendant supporting one commission of sexual assault is sufficiently distinct from conduct on his part to support a different and additional commission of that same offense. In light of these further limitations, the gravamen of the offense cannot be characterized as simply having sexual relations with someone against that person's will, but rather must include doing so in combination with some additional conduct or awareness by the defendant; and the intended unit of prosecution therefore cannot be measured simply by whether a break occurred in the sexual intrusion or penetration inflicted upon the victim, but rather must depend upon whether a shift occurred from one to another of the sets of circumstances that transform an act of sexual intrusion or penetration from noncriminal behavior into a crime of sexual assault.

¶19    The jury's verdicts in this case reflect its findings that the defendant inflicted penetration on the victim while she was helpless to resist, at some point in time, and also that he caused her to submit by means calculated to cause submission against her will, at another. Inflicting sexual penetration upon someone who the actor knows is helpless, which definitionally entails acting with knowledge of an absence of resistance, on the one hand, and causing that person to submit to sexual penetration by means calculated to cause her submission against her will, on the other, clearly involve

12

different conduct. Whether the victim's regaining consciousness is more appropriately characterized as an intervening event, or the defendant's choice to force her to submit, upon her regaining consciousness, as a volitional departure, or perhaps in some other way altogether, these additional factors clearly evidence a change in circumstances from one alternative means of committing sexual assault to another.

¶20    Causing submission of the victim by means of sufficient consequence reasonably calculated to cause submission against her will, after having already penetrated her with knowledge that she was unconscious and for that reason was physically helpless and not consenting, as argued by the prosecution, therefore amounts to factually distinct conduct capable of supporting an additional or successive commission of sexual assault. While the victim's testimony and prior statements were understandably imprecise, and perhaps even inconsistent with regard to the temporal sequence of her periods of consciousness and the defendant's assaultive conduct, there was sufficient evidence to support jury findings of violations of both counts of sexual assault in succession. Whether a criminal defendant might, upon request, be entitled to some further instruction concerning successive commissions of sexual assault by the same defendant upon the same victim has never been at issue in this case.

**IV.**

¶21    The defendant argues, in the alternative, for mandatory concurrent sentencing.

¶22    In the absence of legislation to the contrary, sentencing courts in this jurisdiction have the inherent power to order sentences for different convictions to be served either consecutively or concurrently. Marquez v. People, 2013 CO 58, ¶ 6, 311 P.3d 265, 267.

13

The sentencing court in this case considered its discretion expressly limited by section 18-1.3-406(1) of the revised statutes, which requires that any person convicted of two or more separate crimes of violence arising out of the same incident be sentenced consecutively rather than concurrently. § 18-1.3-406(1)(a), C.R.S. (2016). By contrast, a sentencing court's inherent sentencing power is limited, by section 18-1-408(3), to ordering concurrent sentences for crimes charged by separate counts in a single prosecution, as required by section 408(2), when they are based on the same act or series of acts arising from the same criminal episode and they are supported by identical evidence. We have previously held that the phrase "arising out of the same incident" in section 18-1.3-406 was not intended to convey any meaning different from "arising from the same criminal episode" in section 18-1-408. Marquez, ¶ 15, 311 P.3d at 270.

¶23 Even assuming, as the court of appeals has done, that separate crimes of violence arising out of the same incident would have to be sentenced concurrently whenever they have been supported by identical evidence, a matter this court has never decided, our determination of sufficient evidence in this case to support findings of successive commissions of the same statutory offense, by assaulting the victim while she was unconscious and therefore helpless and by doing so again through the use of force sufficient to overcome her resistance upon awakening, necessarily forecloses that possibility. Section 408 requires a sentencing court to order concurrent sentences only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence. People v. Muckle, 107 P.3d 380, 384 (Colo. 2005). While we made clear in Juhl v. People, 172 P.3d 896, 902 (Colo. 2007), that the identical

14

evidence condition of section 408 applies only to evidence of the defendant's acts, or conduct, as distinguished from evidence of all of the elements of the offense, we had no occasion there to comprehensively define those terms or describe in detail precisely what we intended by the defendant's "conduct," and we again have no need to do so.

¶24 Whether or not successive commissions of sexual assault, according to certain of the alternative sets of circumstances statutorily defining that crime, might be proved without proving different acts or conduct by the defendant, it is clearly the case that a finding of sexual assault by causing submission by means sufficient to overcome the victim's will, as defined at section 402(1)(a), necessarily entails proof of conduct beyond that required for a finding of knowing infliction of sexual intrusion or penetration by the defendant upon a helpless and nonconsenting person, as defined at section 402(1)(h). As we have already indicated, in this case there was an abundance of evidence, both physical and testimonial, from which the jury could find that the defendant caused submission of the victim by applying physical force and violence, once she became conscious and protested for him to stop, beyond his act of inflicting penetration upon a physically helpless person. Nothing more than this was required to demonstrate that the particular successive commissions of sexual assault charged in this case were not proved by identical evidence.

## V.

¶25 Although section 18-3-402, C.R.S. (2016), proscribes a single crime of "sexual assault," the evidence at trial was sufficient to support a jury finding that the defendant committed that crime twice against the same victim. Because the defendant's conduct

15

required for each separate commission of sexual assault was also not supported by identical evidence, concurrent sentences were not required for the two convictions. Although on slightly different grounds, the judgment of the court of appeals is therefore affirmed.