Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 90**

**No. 14SC997, <u>Friend v. People</u>—Plain Error Review—Double Jeopardy—Merger—Lesser Included Offenses.**

This case principally presents two double jeopardy questions: (1) whether the child abuse statute, section 18-6-401, C.R.S. (2018), prescribes more than one unit of prosecution and whether the prosecution presented sufficient evidence to establish that the defendant committed more than one crime of child abuse and (2) whether child abuse resulting in death under sections 18-6-401(1)(a) and (7)(a)(1), is a lesser included offense of first-degree murder of a child under section 18-3-102(1)(f), C.R.S. (2018) ("child abuse murder").

As to the first double jeopardy question presented here, applying the principles set forth in *Schneider v. People*, 2016 CO 70, ¶ 13, 382 P.3d 835, 839, and *People v. Abiodun*, 111 P.3d 462, 466–68 (Colo. 2005), the court concludes that the division below correctly determined that section 18-6-401 creates one crime of child abuse that can be committed in alternative ways. The question thus becomes whether the prosecution proved separate counts of child abuse. The court again agrees with the division and concludes that the

prosecution did not do so and that, therefore, each of the child abuse convictions must merge into one conviction for child abuse resulting in death.

As to the second double jeopardy question at issue, the court concludes for two reasons that the division erred in determining that the defendant's merged child abuse resulting in death conviction does not merge into his child abuse murder conviction. First, the plain language of the applicable statutes shows that "[w]hen a person knowingly causes the death of a child who has not yet attained twelve years of age and the person committing the offense is one in a position of trust with respect to the child," that person is to be convicted of child abuse murder and not child abuse resulting in death. § 18-6-401(7)(c). Second, under the clarified principles set forth in *People v. Rock*, 2017 CO 84, 402 P.3d 472, and *Page v. People*, 2017 CO 88, 402 P.3d 468, which were announced after the division's decision in this case, child abuse resulting in death is a lesser included offense of child abuse murder.

Having determined that the trial court erred in not merging the various counts in this case, the question remains whether these errors were plain. The court concludes that they were and therefore affirms in part and reverses in part the division's judgment.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

### 2018 CO 90

**Supreme Court Case No. 14SC997**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 09CA2536

**Petitioner/Cross-Respondent:**

Mark Alton Friend,

v.

**Respondent/Cross-Petitioner:**

The People of the State of Colorado.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
November 13, 2018

**Attorneys for Petitioner/Cross-Respondent:**
Megan A. Ring, Colorado State Public Defender
Jon W. Grevillius, Deputy State Public Defender
    *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Cynthia H. Coffman, Attorney General
Matthew S. Holman, First Assistant Attorney General
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case principally presents two double jeopardy questions: (1) whether the child abuse statute, section 18-6-401, C.R.S. (2018), prescribes more than one unit of prosecution and whether the prosecution presented sufficient evidence to establish that the defendant, Mark Alton Friend, committed more than one crime of child abuse and (2) whether child abuse resulting in death under sections 18-6-401(1)(a) and (7)(a)(1), is a lesser included offense of first-degree murder of a child under section 18-3-102(1)(f), C.R.S. (2018) ("child abuse murder").[1]

¶2 As to the first double jeopardy question presented here, applying the principles set forth in *Schneider v. People*, 2016 CO 70, ¶ 13, 382 P.3d 835, 839, and *People v. Abiodun*, 111 P.3d 462, 466–68 (Colo. 2005), we conclude that the division below correctly determined that section 18-6-401 creates one crime of child abuse that can be committed

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether child abuse causing death as part of a pattern of conduct under section 18-6-401(1)(a), (7)(a)(I), C.R.S. (2008), merges into first-degree murder child abuse under section 18-3-102(1)(f), C.R.S. (2008), when they are based on identical evidence and the death results solely from accumulated injuries.

2. Whether the court of appeals erred when it held that the defendant's double jeopardy claim was not waived and the trial court's failure to sua sponte merge the defendant's child abuse convictions constituted plain error.

3. Whether the court of appeals erred when it held that Colorado's child abuse statute, section 18-6-401, C.R.S. (2008), only provides means of committing a single offense of child abuse; and the defendant may only be convicted of a single count of child abuse for numerous acts of torture and abuse that took place at different times over several days.

In *Reyna-Abarca v. People*, 2017 CO 15, ¶ 47, 390 P.3d 816, 823, we concluded that an appellate court may review an unpreserved double jeopardy claim and that the court should ordinarily review such a claim for plain error. Accordingly, we need not address the second question on which we granted certiorari review. Under *Reyna-Abarca*, our review of the double jeopardy claim in this case is for plain error.

in alternative ways. The question thus becomes whether the prosecution proved separate counts of child abuse. We again agree with the division and conclude that the prosecution did not do so and that, therefore, each of the child abuse convictions must merge into one conviction for child abuse resulting in death.

¶3 As to the second double jeopardy question at issue, we conclude for two reasons that the division erred in determining that Friend's merged child abuse resulting in death conviction does not merge into his child abuse murder conviction. First, the plain language of the applicable statutes shows that "[w]hen a person knowingly causes the death of a child who has not yet attained twelve years of age and the person committing the offense is one in a position of trust with respect to the child," that person is to be convicted of child abuse murder and not child abuse resulting in death. § 18-6-401(7)(c). Second, under the clarified principles set forth in *People v. Rock*, 2017 CO 84, 402 P.3d 472, and *Page v. People*, 2017 CO 88, 402 P.3d 468, which were announced after the division's decision in this case, child abuse resulting in death is a lesser included offense of child abuse murder.

¶4 Having determined that the trial court erred in not merging the various counts in this case, the question remains whether these errors were plain. We conclude that they were and therefore we affirm in part and reverse in part the division's judgment.

## I. Facts and Procedural History

¶5 This case involves the death of four-year-old MB, the daughter of Friend's girlfriend. Late one evening, MB stopped breathing and was transported to the hospital

in cardiac arrest. The next day, she was declared legally brain dead, and, pursuant to instructions from her biological father, she was removed from life support.

¶6 During an interview with law enforcement on the day that MB was transported to the hospital (and before she died), Friend admitted to striking and throwing MB several times in the prior few days. Specifically, he stated that two days earlier, he had thrown her against a door, and she hit her head on the doorknob. He further conceded that, on that same day, he had repeatedly "popped" MB in the back of the head with his open hand and that he had held her head underwater in the bathtub for at least five seconds. And he said that, during the previous day, he had hit MB on the back of the head with an open hand and with such force that it caused her to fly forward, hit her head against the bed mattress, and bounce backward off the bed and hit her head on the floor. Friend then picked her up and threw her on the bed, after which she vomited and within a few minutes became unresponsive. Friend did not seek medical attention for MB after any of these incidents.

¶7 Friend was ultimately charged with (1) first-degree murder—victim under twelve, position of trust; (2) child abuse resulting in death; (3) child abuse resulting in death—pattern of conduct; (4) two counts of child abuse causing serious bodily injury; and (5) child abuse causing serious bodily injury—pattern of conduct. In pleading each of these counts, the information generally tracked the language of the pertinent statutory provisions, but it did not indicate the specific facts supporting each count.

¶8 The case proceeded to trial, and, at trial, the prosecution treated Friend's abuse of MB as one pattern of conduct that ultimately resulted in her death, rather than as multiple

4

patterns and discrete offenses. A jury convicted Friend on all counts, the trial court entered judgment on each count, and the court sentenced Friend to life in prison without the possibility of parole.

¶9 Friend appealed and raised two contentions that are pertinent here. First, he argued that his five child abuse convictions should merge into a single conviction because the child abuse counts represented alternative means of committing the same offense and the evidence did not support factually distinct offenses. Second, he argued that his remaining child abuse conviction should merge into his child abuse murder conviction because (1) the child abuse statute permitted the prosecution to file first-degree murder charges when the defendant's conduct resulted in the death of a child under the age of twelve and the defendant was in a position of trust with respect to the child and (2) the child abuse counts were included in the child abuse murder count.

¶10 In a unanimous, published decision, a division of the court of appeals agreed with Friend's first contention but disagreed with his second. *People v. Friend*, 2014 COA 123M, ¶ 45, __ P.3d __. As to the first, the division applied our decision in *Abiodun*, 111 P.3d at 466–71, and concluded that the child abuse statute creates one offense that can be committed in alternative ways and that the prosecution had not proved separate offenses here. *Friend*, ¶¶ 61–72. As to the second, the division applied the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), and concluded that child abuse resulting in death is not a lesser included offense of child abuse murder. *Friend*, ¶¶ 78–83. Accordingly, the division declined to merge those convictions. *Id.* at ¶¶ 82–83.

5

¶11    Friend then petitioned and the People cross-petitioned for certiorari. We granted both petitions.

## II. Analysis

¶12    We begin by discussing whether the division below erred in determining that Friend's child abuse convictions must merge. After concluding that the division did not err in this regard, we proceed to consider whether the division erred in determining that Friend's child abuse resulting in death conviction does not merge into his conviction for child abuse murder. Based on the plain language of the applicable statutes and prevailing principles governing lesser included offenses, we conclude that the division erred in determining that these counts do not merge. We end by considering whether the trial court's errors in not merging Friend's various convictions were plain, and we conclude that they were, necessitating amendment of the mittimus.

## A. Child Abuse Convictions

¶13    The People contend that the division erred in concluding that each of Friend's child abuse convictions must merge into one conviction for child abuse resulting in death—pattern of conduct. We are not persuaded.

¶14    The Double Jeopardy Clauses of both the United States and Colorado Constitutions protect an accused from being twice placed in jeopardy for the same offense. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Boulies v. People*, 770 P.2d 1274, 1277 (Colo. 1989). These Clauses protect not only against a second trial for the same offense but also, as pertinent here, against multiple punishments for the same offense. *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005). The Clauses do not, however, prevent

6

the General Assembly from authorizing multiple punishments based on the same criminal conduct. *Id.* In this way, "the Double Jeopardy Clause simply embodies the constitutional principle of separation of powers by ensuring that courts do not exceed their own authority by imposing multiple punishments not authorized by the legislature." *Id.*

¶15 It is the legislature's province to establish and define offenses by prescribing the allowable unit of prosecution. *Id.* at 215. "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." *Id.*

¶16 To determine the allowable unit of prosecution, we look to the statutory language. *Id.* In doing so, we have recognized that when "a number of acts are joined as a disjunctive series, in a single sentence, without any attempt to differentiate them by name or other organizational device, a legislative intent to permit separate convictions and sentences for each enumerated act is not so readily apparent." *Abiodun*, 111 P.3d at 466. To the contrary, we have observed that "by joining alternatives disjunctively in a single provision of the criminal code, the legislature intended to describe alternate ways of committing a single crime rather than to create separate offenses." *Id.* at 467; *see also Schneider*, ¶ 13, 382 P.3d at 839 ("Where . . . alternate descriptions of criminal behavior are disjoined within a single section of the code and bear the same criminal name, a legislative intent to create different offenses and permit separate convictions and sentences for each is not so readily apparent and must be ascertained, if at all, by other considerations."); *Woellhaf*, 105 P.3d at 217 ("By demarcating intimate parts with the

7

disjunctive 'or,' the General Assembly did not prescribe multiple offenses or otherwise alter the scope of the unit of prosecution.").

¶17 In contrast, we have observed that the General Assembly has made clear its intent to proscribe related activities as different crimes by "naming each and segregating them in the criminal code." *Abiodun*, 111 P.3d at 468.

¶18 Turning to the case before us, we note that the child abuse statute provides, in pertinent part:

> A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a).

¶19 As the division below properly observed, this statute sets forth a disjunctive series of acts in an extended single sentence without any attempt to differentiate the acts by name or other organizational device. *Friend*, ¶ 62. Accordingly, pursuant to *Abiodun*, *Schneider*, and *Woellhaf*, we conclude that the child abuse statute prescribes a single crime of child abuse that can be committed in alternate ways.

¶20 In so concluding, we are not persuaded by the People's contention that under the child abuse statute, the unit of prosecution is the infliction of a specified harm, whether through a single act or a pattern of conduct. The People cite no applicable authority supporting this position, and, in our view, the People's position is inconsistent with the above-discussed principles set forth in *Abiodun*, *Schneider*, and *Woellhaf*.

8

¶21 This, however, does not end our analysis because a statute that prescribes a single unit of prosecution does not immunize a defendant from being punished separately for successive commissions of the same offense. *Abiodun*, 111 P.3d at 470. Accordingly, we must next consider whether Friend's acts evinced factually distinct offenses. *See Woellhaf*, 105 P.3d at 218–19.

¶22 To make this determination, "we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses." *Quintano v. People*, 105 P.3d 585, 592 (Colo. 2005); *see also Woellhaf*, 105 P.3d at 219 (noting that in determining if the defendant's conduct constituted factually distinct offenses, we may consider whether, among other things, the acts "occurred at different locations, were the product of new volitional departures, or were separated by intervening events"). If each legally distinct offense has been charged with sufficient specificity to distinguish it from other offenses and if the evidence at trial supported convictions on each such count, then general verdicts of guilt will support multiple convictions. *Abiodun*, 111 P.3d at 471.

¶23 Here, the prosecution charged Friend with five counts of child abuse: (1) child abuse causing death; (2) child abuse causing death—pattern of conduct; (3) two counts of child abuse causing serious bodily injury; and (4) child abuse causing serious bodily injury—pattern of conduct. As noted previously, however, the information did not allege specific facts supporting each of these individual counts. Moreover, although before us the People have attempted to assign specific facts to particular counts, the prosecution did not try the case that way. *See id.* (noting that in determining whether a defendant's

9

acts evinced factually distinct offenses, we look to how the offenses were charged and to the evidence at trial); *Quintano*, 105 P.3d at 592 (noting that a reviewing court looks to the evidence introduced at trial to determine whether the evidence was sufficient to support separate and distinct offenses). To the contrary, the record reveals that at trial, the prosecution did not seek to prove discrete injuries differentiating the various child abuse counts. Instead, it established a number of acts comprising a single pattern of abuse that caused MB's death.

¶24 For these reasons, we conclude that the division below correctly ruled that the prosecution did not prove that Friend had committed separate crimes of child abuse. Rather, the prosecution proved only one count of child abuse resulting in death—pattern of conduct.

## B. Merger of the Child Abuse and Child Abuse Murder Convictions

¶25 Friend argues that the division erred in concluding that his remaining child abuse conviction does not merge into his child abuse murder conviction. He asserts that both the applicable statutory language and our case law regarding lesser included offenses require that these convictions merge. We agree with both of these contentions and address them in turn.

### 1. Section 18-6-401(7)(c)

¶26 Section 18-6-401(7)(a)(I) of the child abuse statute provides, "When a person acts knowingly or recklessly and the child abuse results in death to the child, it is a class 2 felony *except as* provided in paragraph (c) of this subsection (7)." (Emphasis added.)

¶27 Section 18-6-401(7)(c), in turn, states:

10

> When a person knowingly causes the death of a child who has not yet attained twelve years of age and the person committing the offense is one in a position of trust with respect to the child, such person commits the crime of murder in the first degree as described in section 18-3-102(1)(f).

¶28 In our view, this language is plain and unambiguous and makes clear that when the child suffered abuse resulting in death, the child was under twelve, and the defendant was in a position of trust, the defendant has committed child abuse murder and not child abuse resulting in death.

¶29 Our conclusion in this regard is reinforced by the "except as" language in section 18-6-401(7)(a)(I). That language makes clear that when the conditions set forth in that subsection are satisfied, the defendant has committed child abuse resulting in death, *except when the additional factors set forth in section 18-6-401(7)(c) are established.* In that case, the applicable crime is child abuse murder.

¶30 For this reason, we conclude that the division erred in determining that Friend's remaining child abuse conviction does not merge into his child abuse murder conviction.

## 2. Child Abuse Resulting in Death as a Lesser Included Offense

¶31 Even absent the foregoing statutory analysis, we would still conclude, based on prevailing principles governing lesser included offenses, that the division erred in determining that Friend's child abuse resulting in death conviction does not merge into his child abuse murder conviction. Although we believe that our foregoing statutory analysis is alone dispositive, we address the lesser included offense issue because the division did so in a published opinion in a manner with which we respectfully disagree.

11

¶32 The Colorado General Assembly has determined that if one offense is included in another offense, a defendant may not be convicted of both offenses. § 18-1-408(1)(a), C.R.S. (2018). An offense is included in another when the lesser offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18-1-408(5)(a).

¶33 In a series of cases decided in 2017, we provided guidance as to how to determine whether one offense is included in another.

¶34 In *Reyna-Abarca*, ¶ 64, 390 P.3d at 826, we held that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense."

¶35 Thereafter, in *Rock* and *Page*, we addressed a scenario not presented in *Reyna-Abarca*, namely, where the lesser offense could be committed in multiple ways, not all of which are necessarily established by proof of the greater offense. *Rock*, ¶ 15, 402 P.3d at 477–78; *Page*, ¶ 11, 402 P.3d at 470. We clarified that our use of the word "contains" in *Reyna-Abarca* should be understood as "necessarily contains" or "requires." *Rock*, ¶ 16, 402 P.3d at 478; *Page*, ¶ 11, 402 P.3d at 470. Thus, we recognized, "To the extent that a lesser offense is statutorily defined in disjunctive terms, effectively providing alternative ways of being committed, any set of elements sufficient for commission of that lesser offense necessarily established by establishing the statutory elements of a greater offense constitutes an included offense." *Rock*, ¶ 16, 402 P.3d at 478.

¶36 Accordingly,

[i]n order to be included, every alternative way of committing a lesser offense, only one of which is "required," therefore need not be "contained" in the statutory definition of that greater offense. To be an included offense, it is enough that any particular set of elements sufficient for conviction of that offense be so contained.

*Rock*, ¶ 16, 402 P.3d at 478; *accord Page*, ¶ 11, 402 P.3d at 470.

¶37 Applying these principles here, we conclude that child abuse resulting in death is a lesser included offense of child abuse murder.

¶38 The child abuse statute, like the statutes at issue in *Rock* and *Page*, is defined in a set of disjunctive terms effectively providing alternative ways to commit the crime of child abuse. Specifically, as pertinent here, the statute requires proof that (1) the defendant (2) knowingly or recklessly (3) caused an injury to a child's life or health, permitted a child to be unreasonably placed in a situation that posed a threat of injury to the child's life or health, or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately resulted in the death of or serious bodily injury to a child, and (4) the child abuse resulted in the child's death. § 18-6-401(1)(a), (7)(a).

¶39 The child abuse murder statute, in turn, requires proof that (1) the defendant (2) knowingly (3) caused the death of a child who had not yet attained twelve years of age and (4) the defendant was in a position of trust with respect to the child. § 18-3-102(1)(f).

¶40 Under *Rock* and *Page*, as long as the prosecution's proof of the statutory elements of child abuse murder established any set of elements sufficient to prove child abuse

13

resulting in death, then child abuse resulting in death is a lesser included offense of child abuse murder.

¶41 Here, the prosecution's proof that Friend knowingly caused MB's death at a time when she was under twelve years old and Friend was in a position of trust established a set of elements sufficient to prove child abuse resulting in death. Specifically, the prosecution's evidence of child abuse murder established, at a minimum, that Friend had knowingly or recklessly caused an injury to a child's life or health and that child abuse resulted in the child's death.

¶42 Accordingly, we conclude that child abuse resulting in death is a lesser included offense of child abuse murder and that the division, which did not have the benefit of *Reyna-Abarca*, *Rock*, or *Page* when it issued its opinion, erred in ruling otherwise.

¶43 In reaching this conclusion, we are not persuaded by the People's contention that child abuse resulting in death is not included in child abuse murder because, as charged here, the former must be proven through a pattern, which is not a required element of child abuse murder. This argument ignores the clarification of our lesser included offense test set forth in *Rock* and *Page*, which concerned the scenario presented in this case, namely, when a lesser offense can be committed in multiple ways not all of which are necessarily included in the greater offense.

## C. Plain Error

¶44 The question remains whether the trial court plainly erred in not merging Friend's child abuse convictions into one conviction for child abuse resulting in death—pattern of

14

conduct and that remaining child abuse conviction into one conviction for child abuse murder.

¶45    As we stated in *Reyna-Abarca*, ¶ 81, 390 P.3d at 828, "In both our own jurisprudence and in case law nationally, courts have invariably concluded that when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy."

¶46    Here, as in *Reyna-Abarca*, the People have presented no compelling arguments as to why the double jeopardy errors at issue did not rise to the level of plain error. Nor do we perceive a persuasive argument as to why, having discerned error, we should not follow the lead of the vast majority of cases and provide Friend with a remedy.

¶47    Accordingly, we conclude that the trial court plainly erred in not merging the child abuse convictions into one conviction for child abuse resulting in death—pattern of conduct and that remaining child abuse conviction into one conviction for child abuse murder.

## III. Conclusion

¶48    For these reasons, we conclude that section 18-6-401 creates one crime of child abuse that can be committed in alternate ways and that the prosecution did not prove separate counts of child abuse. We further conclude that the child abuse statute precludes conviction of child abuse resulting in death when the prosecution proves child abuse murder and that, in any event, child abuse resulting in death is a lesser included offense of child abuse murder, thereby precluding convictions on both counts. Finally, we conclude that the trial court plainly erred in not merging the child abuse convictions into

15

one conviction for child abuse resulting in death—pattern of conduct and that remaining child abuse conviction into one conviction for child abuse murder.

¶49 Accordingly, we affirm in part and reverse in part the division's judgment, and we remand this case to the division with instructions that the division return the case to the trial court for entry of an amended mittimus reflecting the merger of the child abuse convictions into one conviction for child abuse resulting in death—pattern of conduct and the merger of that remaining child abuse conviction into the child abuse murder conviction, resulting in one conviction and judgment for child abuse murder.