Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2020 CO 43**

**No. 17SC830,** *People v. Espinoza*—**Sentencing and Punishment—Concurrent
and Consecutive Sentencing—Crimes of Violence.**

The People petitioned for review of the court of appeals' judgment reversing

the trial court's imposition of consecutive sentences for Espinoza's ten convictions

for the attempted first degree murder of ten different people. Reasoning that

Espinoza's ten attempted murder convictions were separate crimes of violence, the

trial court considered itself bound by statute to impose consecutive sentences. The

intermediate appellate court, however, found that because the ten convictions

were premised on a "single act of fire-setting," they were supported by identical

evidence, notwithstanding the fact that each conviction required proof that the

defendant attempted to kill a different person. Further concluding that

convictions for multiple crimes of violence that are supported by identical

evidence do not fall within the statutory mandate to sentence consecutively, the

intermediate appellate court reversed and remanded for resentencing.

The supreme court reversed, holding that even according to the

intermediate appellate court's understanding of the term "separate crimes of

violence," Espinoza's convictions required consecutive sentences pursuant to section 18-1.3-406(1)(a), C.R.S. (2019), because offenses defined in terms of their victimization of another and committed against different victims are not capable of being proved by identical evidence within the contemplation of section 18-1-408(3), C.R.S. (2019).

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2020 CO 43**

**Supreme Court Case No. 17SC830**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1920

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Martin Castruita Espinoza.

**Judgment Reversed**
*en banc*
May 26, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Megan C. Rasband, Assistant Attorney General
    *Denver, Colorado*

**Attorney for Respondent:**
Lauretta A. Martin Neff
    *Grand Junction, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1      The People petitioned for review of the court of appeals' judgment reversing the trial court's imposition of consecutive sentences for Espinoza's ten convictions for the attempted first degree murder of ten different people.  Reasoning that Espinoza's ten attempted murder convictions were separate crimes of violence, the trial court considered itself bound by statute to impose consecutive sentences.  The intermediate appellate court, however, found that because the ten convictions were premised on a "single act of fire-setting," they were supported by identical evidence, notwithstanding the fact that each conviction required proof that the defendant attempted to kill a different person.  Further concluding that convictions for multiple crimes of violence that are supported by identical evidence do not fall within the statutory mandate to sentence consecutively, the intermediate appellate court reversed and remanded for resentencing.

¶2      Because offenses defined in terms of their victimization of another and committed against different victims are not capable of being proved by identical evidence within the contemplation of section 18-1-408(3), C.R.S. (2019), and because even according to the appellate court's understanding of the term "separate crimes of violence," Espinoza's convictions therefore required consecutive sentences pursuant to section 18-1.3-406(1)(a), C.R.S. (2019), the judgment of the court of appeals is reversed.

2

# I.

¶3　Martin Castruita Espinoza was charged with first degree arson, third degree assault, and attempted first degree murder (extreme indifference), with corresponding crime-of-violence counts, arising out of an incident in which a fire raged through his mother's apartment. As pertinent to the question presented on certiorari, he was convicted of 10 counts of attempted extreme indifference murder, for which he was sentenced consecutively to a total term of 160 years in the custody of the Department of Corrections.

¶4　Evidence was presented at trial from which the trier of fact could find that on March 4, 2014, the defendant started a fire on the balcony of his mother's apartment, which spread throughout the apartment building and to a neighboring building. The ten people who were named victims of the attempted murder counts were inside the defendant's mother's apartment building during the fire but were able to escape and survive.

¶5　In imposing sentences for the attempted murder convictions, the sentencing court considered itself bound by section 18-1.3-406(1)(a), which requires a sentencing court to impose consecutive sentences for offenses arising out of the same incident committed as separate crimes of violence. As to each of the defendant's attempted murder convictions, the sentencing court specified that the

conviction applied to a different count and a different victim, noted that the offense was found to be a crime of violence, and imposed a sixteen-year sentence to the Department of Corrections to be served consecutively with the other nine attempted murder convictions.

¶6 The defendant appealed and, as relevant here, challenged the trial court's imposition of consecutive sentences. The intermediate appellate court reversed. In reliance on prior holdings of that court, the division understood the reference in section 18-1.3-406(1)(a) to "separate crimes of violence" to encompass only those crimes of violence not supported by identical evidence, and in reliance on prior holdings of this court concerning the meaning of the phrase "supported by identical evidence" for purposes of the concurrent sentence requirement of section 18-1-408(3), the division held that the crimes of violence in this case were supported by identical evidence and therefore were not "separate crimes of violence" for which consecutive sentences would be mandated. Because the trial court felt constrained to sentence consecutively, the division remanded for the trial court to exercise its discretion whether to sentence consecutively or concurrently.

¶7 We granted the People's petition for certiorari review to consider whether the court of appeals erred in finding that the defendant's ten attempted murder convictions were supported by identical evidence and for that reason were not separate crimes of violence giving rise to mandatory consecutive sentencing.

4

## II.

¶8 We have long held that in the absence of legislation to the contrary, sentencing courts in this jurisdiction have the inherent power to order sentences for different convictions to be served either consecutively or concurrently. *Marquez v. People*, 2013 CO 58, ¶ 6, 311 P.3d 265, 267 (citing *Qureshi v. Dist. Court*, 727 P.2d 45, 46–47 (Colo. 1986), and *People v. Self*, 615 P.2d 693, 695 (Colo. 1980)). Both sections 18-1.3-406(1)(a) and 18-1-408(3) of the revised statutes contain provisions restricting a sentencing court's discretion in this regard — the former mandating consecutive sentences under certain circumstances related to the commission of crimes of violence and the latter mandating concurrent sentences under certain circumstances related to the nature of the evidence by which the offenses in question are proved.

¶9 More particularly, section 18-1.3-406 categorizes certain crimes as crimes of violence and specifies how crime-of-violence status is to be established and outlines the specific consequences of a conviction. Subsection (1)(a) of that section mandates that "a person convicted of two or more separate crimes of violence arising out of the same incident" shall be sentenced for such crimes "so that his or her sentences are served consecutively rather than concurrently." *See Marquez*, ¶ 15, 311 P.3d at 271 (equating "incident" with "criminal episode"). Section 18-1-408, on the other hand, treats of the subject of prosecution and conviction of

5

multiple crimes for the same act or conduct, or based on the same act or series of acts arising from the same criminal episode. It generally limits the number of convictions a defendant may suffer where the elements of one offense are definitionally included within another or where the offenses are otherwise definitionally related in specifically enumerated ways. § 18-1-408(1). Subsection 408(2), however, also requires that under certain circumstances crimes based on the same act or series of acts arising from the same criminal episode must be joined in a single prosecution and subsection 408(3) further specifies that if convictions for crimes so joined are supported by identical evidence, the sentences for those convictions, except where multiple victims are involved, must run concurrently.

¶10   Relying largely on prior holdings by other divisions of the court of appeals, the division below accepted as established the proposition that crimes of violence are "separate" within the meaning of section 18-1.3-406(1)(a) only to the extent that they were not proved at trial by identical evidence, as contemplated by section 18-1-408(3); and finding that the ten attempted murder convictions in this case were supported by identical evidence, notwithstanding their involving different victims, it concluded that consecutive sentences were not mandated. This court has never similarly construed the term "separate crimes of violence," as that term is used in section 18-1.3-406(1)(a), to comprehend only those crimes of violence not proved by identical evidence at the trial in question, but we need not address that

6

construction today. It is enough here that the defendant's convictions for attempting to murder different victims were not, and in fact could not have been, supported by identical evidence within the contemplation of section 18-1-408(3).

¶11 Since adoption of the 1972 Colorado Criminal Code, we have had occasion to comment on the identical evidence requirement of section 18-1-408(3) a number of times, including expressly finding that despite its not actually appearing in the sentence of that subsection mandating the imposition of concurrent sentences for acts committed as part of the same criminal episode, it nevertheless was intended to further limit that provision. *See People v. Anderson*, 529 P.2d 310, 312 (Colo. 1974) (construing section 40-1-508(3), C.R.S. (1963 & Supp. 1971), now contained in section 18-1-408(3)). As we have previously explained, this provision offers a criminal defendant protections beyond those granted by constitutional jeopardy and statutory merger guarantees by ensuring that a defendant will not be consecutively sentenced for multiple offenses committed as part of a single criminal episode and established by the same evidence, despite their not technically merging into a single offense. *Meads v. People*, 78 P.3d 290, 296 (Colo. 2003), *abrogated on other grounds by Reyna-Abarca v. People*, 2017 CO 15, 390 P.3d 816. Although our earlier cases dealt largely with the question of whether the evidence was such that a jury could, or necessarily did, find that the convictions were actually based on different acts, necessarily requiring proof by different evidence,

7

*see, e.g.*, *People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005); *Qureshi*, 727 P.2d at 47, in *Juhl v. People*, 172 P.3d 896, 898 (Colo. 2007), we entertained the inverse question, whether the evidence supporting separate convictions was similarly not identical, despite both convictions having been premised on the same criminal act committed by the defendant.

¶12 In *Juhl* we held that the defendant's separate convictions of first degree assault and vehicular assault for the injuries he caused to the driver of another vehicle, despite not precisely sharing the same elements, were nevertheless supported by identical evidence because both were based on "Juhl's act of colliding head-on with Mrs. Bailey's truck while he was engaged in a high-speed chase to elude the police." *Id.* at 902–03. The court of appeals below apparently understood our holding concerning the scope of the "identical evidence" inquiry in that case to limit the relevant inquiry concerning "identical evidence" to nothing more than proof of the volitional, or voluntary, act required for the commission of any crime; and therefore in answering the question whether the defendant's convictions were supported by identical evidence, it considered only whether the defendant's volitional "act of fire-setting" was the same "act" upon which all of his attempted murder convictions were premised. As we would later emphasize in *Schneider v. People*, 2016 CO 70, ¶ 23, 382 P.3d 835, 841, however, in *Juhl* we made no attempt to further explain precisely what we meant by the defendant's "act,"

8

or "conduct," or further describe the circumstances and consequences necessarily included within the definition or scope of criminally proscribed conduct. Similarly, in *Schneider* itself we had no need to define these terms comprehensively. *See id.* at ¶¶ 23–24, 382 P.3d at 841–42 (finding that two convictions for sexual assault were not supported by identical evidence despite being based on a single continuous penetration, where each crime required separate proof of circumstances necessarily attending the defendant's voluntary act for it to qualify as sexual assault, in the one case the conduct being criminal only upon proof that the act of penetration was accompanied by sufficient means to overcome the victim's will, and in the other, the conduct being criminal only upon proof that the act was inflicted upon a helpless and nonconsenting victim).

¶13    Again, today we need not attempt such a global definition, capable of addressing crimes of every nature. It is enough here that an offense defined in terms of committing an act causing harm to another person can never be supported by proof that the defendant committed an act causing harm to a different person, whether or not the defendant's volitional act causing harm was the same; and read in context and as a whole, our rationale in *Juhl* suggested nothing to the contrary. In *Juhl* we sought to distinguish crimes differing in their elements from crimes supported by different evidence, holding in that case simply that the defendant's convictions of the first degree assault and the vehicular

9

assault of the same victim were supported by identical evidence because although the elements of the two crimes differed and neither crime was fully included within the other, proof of the elements of both offenses in that case was necessarily inferred from the same fund of evidence — evidence of "Juhl's act of colliding head-on with Mrs. Bailey's truck while he was engaged in a high-speed chase to elude the police." 172 P.3d at 902–03. Nowhere did we suggest that the two offenses were supported by identical evidence simply because the defendant's volitional act of driving, irrespective of attendant circumstances and consequences necessary to infer the elements of each crime of assault, was proven by the same evidence.

¶14 More directly, however, our opinion in *Juhl* made clear that there was a second victim of the defendant's "act of colliding head-on with Mrs. Bailey's truck while he was engaged in a high-speed chase to elude the police," who was killed by this same conduct of the defendant. *Id.* at 898, 902. As we noted in the opinion, Juhl was therefore also convicted of homicide for killing the driver's passenger. *Id.* at 898. Rather than concluding that sentences for all of the crimes committed by the defendant's same act of colliding head-on with Mrs. Bailey's truck were required to run concurrently, we concluded that the convictions involving Mrs. Bailey must run concurrently with each other, but we left unaffected the defendant's consecutive sentence for causing the death of her passenger. *Id.* at 898–99, 903. In *Juhl* we had little cause to dwell on this distinction since it had long

10

been accepted that crimes involving multiple victims do not fall within the mandate of section 18-1-408(3) for concurrent sentencing. *See People v. Grant*, 30 P.3d 667, 670 (Colo. App. 2000) ("[W]hen multiple convictions arise from crimes committed upon different victims, the evidence is not identical."); *People v. Wafai*, 713 P.2d 1354, 1357 (Colo. App. 1985) ("[D]efendant's multiple convictions arise from crimes committed upon different victims; therefore, the evidence is not identical . . . ."); *People v. Cullen*, 695 P.2d 750, 752 (Colo. App. 1984) ( "[W]here . . . multiple convictions arise from crimes committed upon multiple victims, the evidence is not identical and therefore [section 18-1-408(3)] is inapplicable."); *see also Anderson*, 529 P.2d at 312 (determining that the evidence supporting the two assaults was not identical where "[t]wo separate criminal acts were committed against two different persons").

¶15    Were it not sufficiently clear from the common understanding of the terms themselves that a crime defined as an act causing the death of one person is not proved by evidence demonstrating that the same act by the defendant also caused the death of another person, some thirty-five years ago the legislature expressly amended its original articulation of the concurrent sentence mandate of section 18-1-408(3) by clarifying its intent that the mandate not apply to crimes involving multiple victims, notwithstanding their being based on the same act or series of acts arising from the same criminal episode and being joined as multiple counts in

11

a single prosecution. Ch. 147, sec. 1, § 18-1-408, 1985 Colo. Sess. Laws 661, 661 (adding final clause to the subsection reading: "except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences").

¶16 We find unpersuasive, if not positively casuistic, the assertion that by using the term "except" in section 18-1-408(3), the legislature evidenced a nuanced intent not to circumscribe the meaning of "identical evidence" itself, but merely to exclude from mandatory concurrent sentencing crimes proved by identical evidence when they involve multiple victims. This construction would, without more, not only place far too heavy a burden on the word "except," but if we considered that term as consequential as asserted, it would necessitate a more detailed consideration of the intermediate appellate court's definition of "separate" crimes of violence in section 18-1.3-406(1)(a) as those crimes not "supported by identical evidence" as that phrase appears in section 18-1-408(3).

¶17 Because there is no suggestion here of applying this legislative action retroactively, our prior case law distinguishing a legislative intent to clarify from an intent to change an existing statute is in no way at issue. *Cf. Union Pac. R.R. v. Martin*, 209 P.3d 185, 188–89 (Colo. 2009) (distinguishing legislative clarification from law change in the context of a retroactivity analysis); *City of Colorado Springs v. Powell*, 156 P.3d 461, 464–65 (Colo. 2007) (same). Whatever may have been the legislature's motivation for singling out for specific mention crimes

12

involving multiple victims, its goal in amending the statute was clearly to ensure that punishment for crimes involving multiple victims not be limited to concurrent sentences, even where they have been joined in a single prosecution for having been committed by the same act or series of acts. Nothing in this amendment to section 18-1-408(3) can reasonably have been intended to affect the legislature's separate consecutive sentence mandate for crimes of violence in section 18-1.3-406(1)(a).

¶18 In *Juhl* we concluded that both the defendant's conviction for committing first degree assault of Mrs. Bailey and his conviction for committing vehicular assault of Mrs. Bailey "were supported by evidence of the collision with Mrs. Bailey's truck and the circumstances under which that collision occurred." 172 P.3d at 903. Although we were there intent on distinguishing convictions based on the same act from convictions based on separate acts, the case before us was limited to a situation involving not only the same act, but also crimes committed under the same circumstances, causing the same injuries, to the same victim. *Id.* at 899, 902–03. Our rationale in *Juhl* cannot therefore be reasonably understood so broadly as to suggest that multiple crimes perpetrated against different victims by the same volitional act must be considered supported by identical evidence, and were that the case, our ultimate remand order in *Juhl* would have arguably been inconsistent with that very proposition.

13

## III.

¶19    Much like the other statutory methods of committing first degree murder, extreme indifference murder is ultimately defined in terms of engaging in conduct that causes the death of another person. *Compare* § 18-3-102(1)(d), C.R.S. (2019), *with* § 18-3-102(1)(a)–(c), (e)–(f). The defendant's conduct is proscribed as criminal conduct only to the extent that it has a particular effect on the life of another person, § 18-3-102(1)(d), and therefore proof of the criminal conduct committed by the defendant cannot be distinguished from proof of the injury caused by it. The conduct proscribed by the statute is particular conduct resulting in the death of another person. *Id.* Whether or not the evidence presented at trial supports the proposition that the defendant committed a single voluntary act—as for instance bombing a gathering of people—the evidence that he killed one particular person simply cannot prove, without additional evidence, that he also killed another person. Were the language used by the legislature not clear enough, it would nevertheless be difficult, without more, to imagine that the legislature intended for a defendant convicted of causing the death of many people to be punished no more harshly than a defendant convicted of causing the death of a single person.

¶20    To the extent the defendant's demand for concurrent sentencing in this particular case has even intuitive appeal, that appeal stems from the somewhat counterintuitive way in which attempt liability has been construed in this

14

jurisdiction—not from any legislative mandate of concurrent sentencing for crimes proved by identical evidence. *See, e.g.*, *Montoya v. People*, 2017 CO 40, ¶ 17, 394 P.3d 676, 683–84. Whether there was sufficient evidence, and whether the jury was properly instructed, to find that the defendant knowingly engaged in conduct strongly corroborative of his purpose to create a grave risk of death to each of the victims are questions not before this court, but consecutive sentences are mandated for proper convictions of the attempted first degree murder of multiple victims.

## IV.

¶21 Because offenses defined in terms of their victimization of another and committed against different victims are not capable of being proved by identical evidence within the contemplation of section 18-1-408(3), and because even according to the appellate court's understanding of the term "separate crimes of violence," Espinoza's convictions therefore required consecutive sentences pursuant to section 18-1.3-406(1)(a), the judgment of the court of appeals is reversed.